DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment of conviction issued by the Huron County Court of Common Pleas in a case involving the theft of an automobile and its use to commit burglaries. Because we conclude that the trial court did not commit any error prejudicial to appellant's case, we affirm.
 {¶ 2} On March 18, 2002, appellant, Al J. De Boe, was indicted on one count of grand theft of a motor vehicle, in violation of R.C. 2913.02(A)(1), and/or (3) and (B)(5) and eight counts of burglary, in violation of R.C. 2911.12(A)(3). The indictment stemmed from a string of events which involved appellant's alleged theft of an automobile in Lucas County and the use of that vehicle to visit various schools and to commit theft. Appellant pled not guilty. At trial the following facts were presented to the jury through the testimony of 28 witnesses, including police officers, principals, secretaries, and other school employees.
 {¶ 3} Tom Coriell testified that on February 14, 2002, appellant entered his office supply store in Lucas County, Ohio, and wandered near an inner office area where the keys to Coriell's white 1998 Taurus were kept. No other customers entered the store that morning. At lunch time, Coriell noticed his keys were missing. When he looked outside, he then realized his vehicle was also missing from the parking space right outside the store. The car was reported stolen.
 {¶ 4} On February 27, 2002, the Taurus was recovered in Norwalk, Huron County, Ohio, incident to appellant's arrest for an alleged theft from a school located there. Appellant was driving the car. Coriell's license plates had been replaced with those belonging to another vehicle. The car's odometer registered an increase of approximately 3,800 miles from the date it had been stolen two weeks before. Coriell said that when he eventually picked up his car from police, it was filled with trash and garbage and he had to purchase new plates for it since his were never recovered.
 {¶ 5} Witness testimony indicated that, on February 25, 26 and 27, 2002, appellant allegedly engaged in a series of stops at various Huron County locations, including eight schools and two residences. The visits occurred in Huron, Amherst, and three towns located along State Route 20: Norwalk, Monroeville, and Bellevue. Virtually all of the witnesses described appellant as a very short-haired, well-dressed, polite African-American man of medium height, wearing a long tan trench coat. In court, all the witnesses except one positively identified appellant, now wearing longer hair, as the man who had been at the schools or residences.
 {¶ 6} According to witnesses, around 9:00 a.m. on Monday, February 25, 2002, appellant first visited St. Paul School campus, including the Firelands Catholic Education Development Office ("FCEDO") building, located in Huron, Ohio. Teresa Storer, an FCEDO employee, saw appellant coming out from an art room and into the hallway inside the FCEDO building. She noted that she walked by the office of Ruth Weissenberger, tuition manager for St.Paul School. She initially thought Weissenberger was in her office because the door was slightly ajar. Storer later realized that Weissenberger was not in her office at that time. Before that, another employee saw appellant in the hall coming from the direction of Weissenberger's office. At Storer's inquiry, appellant told her he was interested in enrolling his children at the school and wanted registration information.
 {¶ 7} Storer then walked appellant over to the elementary school building to speak with the principal, Steve Schumm. Appellant told Schumm he had a daughter he was interested in enrolling. He stated that he was an IBM consultant and was moving into the area from Toledo. After Schumm gave him a registration packet, he told appellant he could talk about tuition with Ruth Weissenberger, whose office was located back at the FCEDO building. Schumm stated that appellant then left the school, presumably to talk with Weissenberger.
 {¶ 8} Ruth Wiesenberger testified that she left her office at a little before 9:00 to attend a 45 minute mass at the chapel. She stated that her door is only open when she is in her office. When she returned, she went to her purse which had been left in her office to get money for another employee. Wiesenberger stated that she had withdrawn money from the bank over the weekend and had placed it in a bank envelope. She said she panicked when she realized that the money was missing from the envelope. Weissenberger looked around her office and even checked at her home, thinking that it might have fallen out. The money was never found.
 {¶ 9} A report was made to the Huron County Sheriff's department, including a description of appellant and his vehicle, and his possible connection with the theft. Police later ran a fingerprint check on the envelope but were unable to get a positive identification.
 {¶ 10} Appellant next appeared in Norwalk at 100 West Main Street, the home of Dorothy Smith, age 80. At approximately 10:00 a.m., Smith was talking on the telephone with her daughter, Roxanne Walker, who lives next door at 98 West Main Street. Walker's residence is connected to a funeral home business which is clearly designated in the front of the building. Smith called Walker to apprise her of a white car that had driven through the back yard area and parked in the drive next to the funeral home. As Smith stood in her kitchen on the phone, appellant entered her home through an unlocked door. Startled, Smith threw the phone down and asked appellant if he always entered people's homes without knocking or ringing the doorbell. He said he was looking for the funeral home and then left. Smith said she told her daughter on the phone what had happened.
 {¶ 11} Walker testified that the funeral home is easily distinguished from nearby residences. She said that right after the incident with her mother she heard someone trying to open the front door of the funeral home. Since the door was locked and the manager was not there, she ignored the person. Walker was getting ready to run some errands. When she opened the back door to leave the house, appellant was standing in the inside back stairway of her home. Appellant stated he was there to arrange for a funeral. She told him to come back later and he left. Walker then went back into the house and watched appellant from an office area which attaches her residence to the funeral home. She saw appellant get into the white car and leave, driving west. She stated that appellant never returned to the funeral home. Smith and Walker both noted that nothing was stolen from their homes.
 {¶ 12} At approximately 10:30 a.m., appellant entered St. Joseph's School in Monroeville, Ohio. A teacher found him wandering in the hall and took him to the office. Deborah Ann Chase, a school secretary, testified that appellant said he wanted registration information since he was thinking about enrolling his granddaughter in the school. She gave him a packet and he left. Several minutes later, appellant returned and asked about directions to St. Paul's school. When Chase told him that St. Paul's tuition was higher than St. Joseph's, appellant said that was all he needed to know, and then left. Chase acknowledged that nothing was taken from the school.
 {¶ 13} Appellant next appeared at the Lyme School in Bellevue, Ohio. School secretary Paula Buchanan testified that at 10:52 a.m. when the recess bell rang, appellant entered the school office. He asked directions to St. Joseph's school. She gave him the directions and then walked him back outside the school. A few minutes later, a teacher reported a man walking in the hallway. Concerned about safety procedures, Buchanan went to the principal, Jarold Garman, and reported what had happened. Garman then testified that he found appellant in the hall. Appellant told Garman that he owned a custodial service and was looking for the custodian to discuss whether he could provide custodial services to the school system. Garman was reasonably sure, in court, that appellant was the man at the school, but was not "100 per cent" certain. Garman also acknowledged that nothing was stolen from the school.
 {¶ 14} Late that same morning, appellant entered the Immaculate Conception School, located off State Route 20 near Bellevue. Sister Bernarda Breidenbach, school principal, testified that appellant said he was looking in the Bellevue, Norwalk, and Sandusky areas for a school to enroll his grandchildren. She spoke with him briefly and gave him registration forms. Appellant then left. A secretary testified that while he talked with the principal, appellant kept glancing over at her desk area, making her uncomfortable. Nothing was taken from and no charges were filed pertaining to this school.
 {¶ 15} The last reported stop on February 25, 2002 was at St. Mary's School, Norwalk. Appellant entered the school and asked a secretary, Dian Stoll, about enrolling his grandchildren in the school. While he was in the office, Principal Dan Gerold came out of his office and briefly greeted appellant. Stoll said she gave him a registration packet and appellant left. A few minutes later, she found appellant in a nearby hallway by the cafeteria. He told her he was waiting for the cook, who was on the phone, to give him a menu. After getting a copy of the menu, appellant then left. Again, nothing was discovered missing from the school.
 {¶ 16} The next day, February 26, 2002, appellant appeared at St. Peter's School in Huron, Ohio. Cindy Wilson, principal, testified that a teacher's aide found appellant in a hallway and brought him to her office. Appellant said he was interested in enrolling his children. After a brief conversation with Wilson he was given a registration packet, and the secretary, Vickie Miller, showed him out of the school. A few minutes later, Wilson left her office to go to a computer in another inner office area and found appellant back in an unlighted office with his hands in a purse. Appellant said he changed his mind and was looking for the secretary to give him the tour of the school. Wilson took him out of the area, directed Miller to give him a tour, and then went to determine who the purse belonged to and if anything was missing.
 {¶ 17} Meanwhile, appellant told Miller that he left his car running and needed to go out and turn it off since he was going to have the tour. Not knowing about the purse incident, she walked him to the door and said she would wait there for his return. Appellant left the building. Wilson came back to Miller, asked where appellant was, and realized he had fled. Wilson ran to the end of the building to see appellant driving off in the white car. She was able to call off a partial license plate number to Miller who wrote it down. Wilson then explained about the purse, and Miller identified it as her own. Miller testified that at least $20 was missing from her purse, as well as an envelope containing $28 and marked "Lunch Money" which had been laying on her desk.
 {¶ 18} Sometime before noon on Wednesday, February 27, 2002, appellant entered the Powers School in Amherst, Ohio. Principal David Anghilanate said an aide saw appellant in the hallway and brought him to the office. Appellant stated that he was inquiring about doing student teaching at the school. Anghilanate told him that student teachers were not set up directly with the schools, and then asked appellant to come to the office and show his identification. Appellant agreed and showed the principal his driver's license which showed "A. De Boe" from Toledo, Ohio. Appellant appeared agitated and would not say what business he was in. When appellant left to go to his car, Anghilanate followed him out to write down his license plate number. Appellant got back out of the car and approached the principal, asking what he was doing. When the principal replied that he was writing down his license number, appellant said, "You're not going to f____ with me!" Anghilanate retreated toward the school and appellant followed, saying that he wanted the principal's name. Anghilanate told appellant his name and walked into the building. Appellant apparently then left. Anghilanate then called the local police.
 {¶ 19} Between 11:00 a.m. to 11:30 a.m., appellant entered the League Street School in Norwalk. Karen Berry, the school secretary, said she had just returned from lunch and left the office area to deliver a message to a student. A first grader, Hayden Meifert, was ill and was sitting at a table outside the office area. Berry said that when she returned to her office, she found appellant behind the counter area. When she inquired, he said he needed directions to Monroeville. She gave him directions, pointing to State Route 20 and the direction he should go. Appellant then left. Hayden then told her that appellant had been in the health room and bathroom located in the back of the office area. Berry went into the bathroom where she keeps her purse and noticed that it was moved. She then discovered that $78 was missing from her purse. She told an aide to run out and get appellant's license plate number and the make and model of the car, which she did. The aide had also seen appellant behind the counter. Berry called police, reported what had happened, and gave them the information written down by the aide.
 {¶ 20} Officer Todd Careless of the Norwalk Police Department received the dispatch and the description. Within a few minutes he sighted appellant in the white Taurus and pulled him over. On the day of his arrest, appellant, a medium height African-American man, was nicely dressed, wore a long tan trench coat and had very short hair. When searching appellant incident to his arrest, an officer found $48 folded up in the outside pocket of appellant's trench coat. After being Mirandized, appellant spoke with Officer David Smith. Smith testified that appellant admitted being at St. Paul's, the League Street School, and another school in Huron. Appellant denied being at any other school or stealing anything.
 {¶ 21} When Norwalk police ran a check on the VIN number of the car and the license plates, both came back as reported stolen. The plates were issued to a vehicle owned by appellant's sister. The day after appellant's arrest, appellant's sister and some relatives appeared at the police station asking for the return of the impounded Taurus. The car was not turned over to appellant's sister, but was eventually returned to Corielle, its owner.
 {¶ 22} The jury convicted appellant on all nine counts, (Count 7 [St. Joseph's School] reduced to attempted burglary). Appellant was sentenced to one year on each count to be served consecutively, for a total of nine years.
 {¶ 23} Appellant now appeals that judgment, setting forth the following six assignments of error:
 {¶ 24} "Assignment of Error Number I
 {¶ 25} "The trial court erred by not dismissing counts one and two because they were committed in Lucas County and not Huron County, Ohio in violation of the Ohio Constitution.
 {¶ 26} "Assignment of Error Number II
 {¶ 27} "The trial court invaded the province of the jury on Count 1 by ruling that the determination of venue is a matter of law for the court to decide.
 {¶ 28} "Assignment of Error Number III
 {¶ 29} "The trial court erred as a matter of law by not dismissing Count 2 of the indictment for lack of venue based upon statute.
 {¶ 30} "Assignment of Error Number IV
 {¶ 31} "The trial court erred by not dismissing Counts 5 through 9 because of insufficient evidence.
 {¶ 32} "Assignment of Error Number V
 {¶ 33} "The trial court erred to the prejudice of the defendant by permitting other act evidence that exceeded the limited scope of R.C. 2945.59 and Evidence Rule 404(B).
 {¶ 34} "Assignment of Error Number VI
 {¶ 35} "The trial court erred in permitting the introduction of other act evidence for the purpose of impuning [sic] the veracity of a defendant."
 I. {¶ 36} Appellant, in his first assignment of error claims that the trial court erred in not dismissing Counts 1 and 2 because they were allegedly committed in Lucas County, not Huron County where the case was tried. Appellant contends that R.C.2901.12 is unconstitutional in that it violates Article I, Section 10 of the Ohio Constitution.
 {¶ 37} For a statute to be declared unconstitutional, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." State exrel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. Accord State v. Thompkins (1996),75 Ohio St.3d 558, 560. "Further, doubts regarding the validity of a legislative enactment are to be resolved in favor of the statute." State v. Gill (1992), 63 Ohio St.3d 53, 55, citingState ex rel. Swetland v. Kinney (1982), 69 Ohio St.2d 567.
 {¶ 38} The Ohio Constitution guarantees to its citizens, "a speedy trial by an impartial jury of the county in which the offense is alleged to have been committed * * *." Section 10, Article 1, Ohio Constitution. The primary purpose of this constitutional provision is to fix the place of trial. State v.Fendrick (1907), 77 Ohio St. 298, 300. This constitutional principle was embodied by the legislature in R.C. 2901.12, which provides that, "the trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." The statutory "any element" rule was approved by the Ohio Supreme Court in State v. Draggo (1981),65 Ohio St.2d 88. R.C. 2901.12 merely provides the criteria for which territory an offender may be tried for multiple offenses which involve different jurisdictions or venues. Since R.C.2901.12 does not deprive an offender of his right to a properly venued jury trial, it is not incompatible with the Ohio Constitution. Therefore, R.C. 2901.12 is not unconstitutional.
 {¶ 39} Accordingly, appellant's first assignment of error is not well-taken.
 II. {¶ 40} In his second assignment of error, appellant argues that the trial court invaded the province of the jury on Count 1 by ruling that the determination of venue is a matter of law for the court to decide.
 {¶ 41} Ohio's general criminal venue statute vests power to hear a criminal case in any court that has subject matter jurisdiction and is situated in the county wherein the offense occurred. R.C. 2901.12 (A). A trial court's venue ruling, subject to statutory limitations, rests in the sound discretion of the trial court, and should not disturbed on appeal absent an abuse of that discretion. See State v. Maurer (1984),15 Ohio St.3d 239, 250. Venue is not a material element of any crime but, unless waived, is a fact that must be proven at trial beyond a reasonable doubt. State v. Headley (1983), 6 Ohio St.3d 475,477; Draggo, supra at 90.
 {¶ 42} In this case, appellant has confused the determination of where venue is proper and proof of venue at trial. The trial court determines whether a case is properly venued in its court. The jury then determines whether sufficient evidence has been presented to establish venue and that a crime took place within that venue. Therefore, appellant's acts established sufficient contact to meet the statutory venue requirements.
 {¶ 43} Accordingly, appellant's second assignment of error is not well-taken.
 III. {¶ 44} In his third assignment of error, appellant argues that Count 2 should have been dismissed for lack of venue under Ohio statutes. We disagree.
 {¶ 45} R.C. 2901.12(C) provides that when the offense involves "the unlawful taking * * * of property * * * the offender may be tried in any jurisdiction from which or into which the property * * * was taken [or] received * * *." Furthermore, R.C. 2901.12(H) states that:
 {¶ 46} "[w]hen an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima facie evidence of a course of criminal conduct:
 {¶ 47} "(1) The offenses involved the same victim, or victims of the same type or from the same group;
 {¶ 48} "(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another;
 {¶ 49} "(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective;
 {¶ 50} "(4) The offenses were committed in furtherance of the same
 {¶ 51} conspiracy;
 {¶ 52} "(5) The offenses involved the same or a similar modus operandi;
 {¶ 53} "(6) The offenses were committed along the offender's line of travel
 {¶ 54} in this state, regardless of the offender's point of origin or destination."
 {¶ 55} See, also, State v. Beuke (1988), 38 Ohio St.3d 29, paragraph one of the syllabus (for offenses committed in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element thereof).
 {¶ 56} In this case, appellant's actions began in Lucas County with the alleged theft of the keys and the Taurus; this vehicle was then taken into Huron County. This offense began a course of alleged criminal conduct which involved traveling from school to school or other premises for the purpose of committing additional offenses, i.e. stealing money from those premises. Consequently, appellant's actions fall squarely within the statutory venue provisions of R.C. 2901.12(C) and (H). Therefore, venue was proper in Huron County, where appellant was eventually caught with the automobile while committing other offenses.
 {¶ 57} Accordingly, appellant's third assignment of error is not well-taken.
 IV. {¶ 58} Appellant, in his fourth assignment of error, claims that the trial court erred in failing to dismiss Counts 5 through 9 because of insufficient evidence.
 {¶ 59} When reviewing the denial of a Crim. R. 29(A) motion for judgment of acquittal, an appellate court must evaluate whether, "the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." See State v.Bridgeman (1978), 55 Ohio St.2d 261. An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that is used to review a sufficiency of the evidence claim. State v. Carter (1995), 72 Ohio St.3d 545, 553.
 {¶ 60} "Sufficiency" of the evidence applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine:
 {¶ 61} "`the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" Id., quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 62} R.C. 2911.12(A)(3) provides:
 {¶ 63} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 64} "* * *
 {¶ 65} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with the purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense."
 {¶ 66} Entry by "stealth" may be defined as "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within" an occupied structure without permission. See State v. Ward (1993), 85 Ohio App.3d 537, 540. The statute requires only that the State must prove a crime was intended, not that the crime intended was actually committed. State v.Lengyel, 5th Dist. No. 2002AP060047, 2003-Ohio-2294
 {¶ 67} In the present case, we have thoroughly reviewed the 435 page transcript of the testimony of the 28 witnesses involved with appellant's travels. Evidence was presented that appellant stole a vehicle and then used that vehicle to travel from place to place, using stealth or deception to gain entry to restricted areas of schools or private homes. At one school he was actually seen with his hands inside a purse. In two others, money was missing immediately after his presence near the area where the money had been. Appellant told different "stories" at each location and, at times, to each person at a single location. He asked for directions to schools that he had already been to. From the evidence presented, a jury could infer that appellant's actions indicated that his intent was not to register children in a school or to arrange a funeral, but, rather, was to commit an offense when he entered the occupied structures. Thus, we conclude that, construing the evidence in a light most favorable to the prosecution, sufficient evidence was presented from which "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 68} Accordingly, appellant's fourth assignment of error is not well-taken.
 V. {¶ 69} We will address appellant's fifth and sixth assignments of error together. Appellant contends that the trial court erred by permitting other act evidence that exceeded the limited scope of R.C. 2945.59 and Evidence Rule 404(B) and erred in permitting the introduction of other act evidence for the purpose of impugning the veracity of appellant.
 {¶ 70} Generally, the admission or exclusion of evidence rests in the trial court's sound discretion and will not be reversed absent an abuse of that discretion. State v. Hymore
(1967), 9 Ohio St.3d 122, 128. In order to find an abuse of discretion we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. R.C. 2945.59 enumerates the exceptions to the well-settled Ohio principle prohibiting the admission of evidence of an accused's commission of prior criminal acts where the practical effect of such evidence is merely to show the accused's propensity toward committing crime. See State v. Curry (1975),43 Ohio St.2d 66, 68-69; State v. Burson (1974),38 Ohio St.2d 157, 158; State v. Hector (1969), 19 Ohio St.2d 167, 175. R.C.2945.59 provides:
 {¶ 71} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 72} The rationale underlying the statute is to prohibit the use of highly prejudicial evidence with limited probative value which may confuse the jury and which may create an overly strong tendency of the jury to believe the defendant guilty of the current charge simply because he is a person likely to do commit such crimes. See Curry, supra at 68. Accordingly, R.C.2945.59 is narrowly interpreted by Ohio courts and is generally restricted to limited purposes. Curry, supra; Burson, supra.
 {¶ 73} Evid.R. 404(B) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Although evidence of other crimes, wrongs or acts committed by the accused either prior to or subsequent to the crime charged is inadmissible to show that the accused has a propensity to commit crimes, it may be relevant and admissible to show motive or intent, the absence of mistake or accident, or a scheme, plan or system in committing the act in question. State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus.
 {¶ 74} When other acts evidence is relevant for one of those limited purposes, the court may properly admit it, even though the evidence may show or tend to show the commission of another crime by the accused, unless the evidence is unduly prejudicial to the accused. R.C. 2945.59. The trial court must determine that: (1) the other act is relevant to the crime in question, and (2) evidence of the other act is material to an issue placed in question at trial. State v. McCornell (1993),91 Ohio App.3d 141, 146, citing State v. Howard (1978), 57 Ohio App.2d 1;State v. Strong (1963), 119 Ohio App. 31. Evidence of an accused's other acts is thus admissible only when it "tends to show" one of the material elements in the charged offense and only when it is relevant to the proof of the accused's guilt for such offense. Curry, supra; Burson, supra. "Relevancy" are those prior criminal acts which are close in time, similar in nature and mode of execution and may be probative evidence of an accused's intent in the charged action. Burson, supra;Snowden, supra.
 {¶ 75} A review of the evidence in this case indicates that the critical element of the state's case was proof of appellant's "purposeful" intent to commit a crime within the occupied structures he entered. Since there was no direct evidence of such specific intent, it was necessary for the state to establish appellant's intent through circumstantial evidence. In our view, none of the evidence or testimony in this case was improperly admitted, since it was relevant to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The "other acts" were part of appellant's continuous course of conduct, which included actions which were close together in time and location, and carried out in a highly similar manner. Appellant used variations of the same story, i.e. that he wanted to enroll his children in school. He entered a school without anyone's knowledge, was escorted out, and then re-entered the school. Simply because he became hostile in one of those locations, we see no reason to exclude this evidence. This evidence was necessary to establish appellant's pattern of behavior and his intent to steal money or commit other offenses in the various places he visited. Thus, appellant's fifth assignment of error is without merit.
 {¶ 76} Appellant argues in his sixth assignment of error that the court improperly permitted "other acts" testimony for the purpose of impugning appellant's veracity. Appellant refers to the testimony of Officer Todd Careless relating appellant's statements made during his interview with Huron police. Appellant apparently first denied being at the Huron school and later admitted being there. Appellant also stated that, in small towns, he felt discriminated against due to his race.
 {¶ 77} We initially note that no objection was made to these statements as improper under R.C 2945.59 or Evid.R. 404(B). Failure to object to an error in the trial court in a criminal proceeding precludes the issue from being raised on appeal, unless the issue rises to the level of plain error. See State v.Underwood (1983), 3 Ohio St.3d 12, 13; State v. Long (1978),53 Ohio St.2d 91. Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." See Crim. R. 52(B); Underwood, supra;Long, supra.
 {¶ 78} Appellant failed to object to the police officer's testimony at trial, thus waiving the issue on appeal unless the admission of the testimony constitutes plain error. Appellant's own statements were admissions and, contrary to his claims, do not provide evidence of "other acts" or indicate that appellant was a bad person. When viewed in light of the volume of other evidence presented, appellant's discrimination statement is simply irrelevant. Since we cannot say that, but for the alleged error the outcome of the trial clearly would have been different, admission of the officer's testimony did not constitute plain error.
 {¶ 79} Therefore, the trial court did not abuse its discretion in admitting evidence of appellant's actions in a course of allegedly criminal conduct or appellant's own statements to police.
 {¶ 80} Accordingly, appellant's fifth and sixth assignments of error are not well-taken.
 {¶ 81} The judgment of the Huron County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
Judgment Affirmed.
Handwork, Knepper and Singer, J., concur.