[Cite as *In re K.B.*, 2010-Ohio-6083.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| K. B., | ) | |
| ALLEGED DEPENDENT CHILD. | ) | |
| | ) | CASE NO. 10-BE-13 |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas, Juvenile Division of Belmont County, Ohio
Case No. 09JC386

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellee     No brief filed

For Appellant     Attorney Richard J. Hura
Angela Burghy     WPA Memorial Building
132 S. Broad St., Suite 204B
Canfield, Ohio 44406

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: December 10, 2010

DONOFRIO, J.

{¶1} Appellant, Angela B., appeals from a Belmont County Common Pleas Court, Juvenile Division decision terminating her parental rights and granting custody of her son to appellee, the Belmont County Department of Job and Family Services.

{¶2} Appellant gave birth to K.B. on April 16, 2009. On April 24, 2009, appellee filed a complaint asserting that K.B. was a dependent child. The complaint alleged that while at the hospital giving birth, appellant admitted to using Vicodin and tested positive for opiates. The complaint further stated that appellee had custody of appellant's daughter and had filed for permanent custody in that case because appellant had not corrected the concerns raised in her case plan and her home still had no working water. Appellant agreed to emergency shelter care.

{¶3} On July 15, 2009, the trial court held an adjudication hearing at which appellant stipulated to the allegations in the complaint. The court subsequently adjudicated K.B. dependent and granted temporary custody to appellee.

{¶4} On January 15, 2010, appellee filed a motion for permanent custody of K.B. It alleged that appellant had not completed her case plan objectives and K.B. could not or should not be placed with appellant within a reasonable period of time. It also noted that K.B.'s father wished to permanently surrender his rights.

{¶5} The court held a hearing on the custody motion where it heard from numerous witnesses, including appellant. The court found that it was in K.B.'s best interest that it grant permanent custody to appellee. Specifically, it found that there was a lack of interaction and relationship between K.B. and appellant, K.B. was in need of a legally secure permanent placement and appellant could not and should not be able to provide such placement, and appellant had her parental rights involuntarily terminated with respect to K.B.'s sibling. Additionally, the court found by clear and convincing evidence that K.B. could not be placed with appellant within a reasonable time or should not be placed with appellant. The court also made a finding that K.B.'s father permanently surrendered his rights in February 2010.

{¶6} Appellant filed a timely notice of appeal on May 26, 2010.

**{¶7}** Appellant's counsel has filed a no merit brief and request to withdraw as counsel pursuant to *State v. Toney* (1970), 23 Ohio App.2d 203. In *Toney*, this court set out the procedure to be used when appointed counsel finds that an indigent criminal defendant's appeal is frivolous. This court recently held that the *Toney* procedure also applies in cases where appointed counsel seeks to withdraw in a parental rights case. *In re K.B.*, 7th Dist. No. 09-BE-24, 2010-Ohio-1015.

**{¶8}** The *Toney* procedure is as follows:

**{¶9}** "3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.

**{¶10}** "4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, *pro se.*

**{¶11}** "5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments *pro se* of the indigent, and then determine whether or not the appeal is wholly frivolous.

**{¶12}** " * * *

**{¶13}** "7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed." Id. at the syllabus.

**{¶14}** This court informed appellant that her counsel filed a *Toney* brief. Appellant did not file a pro se brief.

**{¶15}** Although appellant's counsel filed a *Toney* brief, he raised two potential issues. Thus, we will incorporate these issues into our examination of the proceedings. Counsel has asserted:

{¶16} "THERE EXISTS CLEAR AND CONVINCING EVIDENCE TO SUPPORT THE DECISION TO GRANT PERMANENT CUSTODY TO BELMONT COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES."

{¶17} "THE MANIFEST WEIGHT OF THE EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING."

{¶18} A parent's right to raise his or her children is an essential and basic civil right. *In re Murray* (1990), 52 Ohio St.3d 155, 157, citing *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208. However, this right is not absolute. *In re Sims,* 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. Id.

{¶19} We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. *Sims,* 7th Dist. No. 02-JE-2, at ¶36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶20} The trial court may grant permanent custody of a child to the agency if the court determines by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. R.C. 2151.414(B)(1)(a). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368.

{¶21} In determining whether it is in the child's best interest to grant custody to the agency, the court shall consider:

{¶22} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶23} "(b) The wishes of the child, * * * with due regard for the maturity of the child;

{¶24} "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *;

{¶25} "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶26} "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1).

{¶27} One of the R.C. 2151.414(E)(7) to (11) factors applies here. R.C. 2151.414(E)(11) states: "The parent has had parental rights involuntarily terminated * * * with respect to a sibling of the child."

{¶28} The evidence supports the trial court's grant of permanent custody to appellee. Numerous witnesses testified as follows.

{¶29} Arbita Lal was appellant's therapist at North Point, a community mental health center. Appellee had referred appellant to North Point for drug and alcohol and mental health assessments. (Tr. 17). Lal stated that appellant failed to complete either portion. (Tr. 17). Lal testified that appellant had ten therapy sessions scheduled between July 2009 and January 2010, but she only attended one. (Tr. 12). Appellant cancelled seven appointments and simply failed to show for two others. (Tr. 13). Consequently, Lal told appellant that she could not continue as a client because of appellant's noncompliance with treatment. (Tr. 13). Lal also stated that appellant had nine scheduled appointments with a doctor at North Point. (Tr. 13-14). Of those nine doctor's appointments, appellant attended three, canceled three, no-showed for one, and the doctor cancelled one. (Tr. 14). Lal stated that appellant's reasons for her cancellations were mostly for lack of transportation or illness. (Tr. 16). Lal testified this was despite appellant being offered transportation

services from North Point. (Tr. 16). Finally, Lal testified that appellant told her that she had not been taking her psychotropic medication from August through November 2009. (Tr. 31).

**{¶30}** Sarah Day is a counselor who conducts the 12-week parenting program that appellant was required to complete as part of her case plan. Day stated that the classes are held once a week. (Tr. 35). She testified that appellant attended her first parenting class in March 2009. (Tr. 35). Appellant then attended three other classes for a total of four, the most recent one having been in July 2009. (Tr. 35). Day stated that appellant called and cancelled 17 times and no-showed three times. (Tr. 36). Because appellant exceeded the amount of no-shows permitted, Day suspended her from the program. (Tr. 36-37). Most of the cancellations, Day stated, were due to transportation issues. (Tr. 39).

**{¶31}** Janice Gearhart is appellant's acquaintance. She testified that appellant dated a family member of hers, Monique, in 2009 and during that time appellant stayed at her house approximately six nights a week. (Tr. 45-46). Gearhart additionally testified that appellant helped with her children while she was there and that she did not have any concerns about appellant using drugs or alcohol in her home. (Tr. 46-48). Gearhart opined that appellant would be a wonderful mother if she treated her own children the way she treated Gearhart's children. (Tr. 48). Gearhart did state that after appellant and Monique broke up, appellant called her house and threatened her. (Tr. 49). However, she stated that appellant had since apologized. (Tr. 54-55).

**{¶32}** Monique testified that appellant drinks "every now and then" and that appellant used drugs at times to control her back pain. (Tr. 61).

**{¶33}** April B., is appellant's sister. She accompanied appellant to many visits with K.B. (Tr. 72). During the visits, April observed appellant feed K.B., change his diapers, and play games with him. (Tr. 71). She also saw appellant give K.B. a hug or kiss at the end of each visit. (Tr. 85). Additionally, April testified that she and appellant own a house together that they inherited from their mother. (Tr. 73). She

stated that all of the utilities are in working order, although she stated that at one point the water was not working due to a broken pipe. (Tr. 74). In regard to appellant's mental health, April testified that appellant is supposed to take medication for bipolar disorder. (Tr. 76). She stated that she has concerns for appellant because she "flips out about something" occasionally and it takes her a while to calm down. (Tr. 76). April also testified that appellant took Vicodin for her back pain during her pregnancy. (Tr. 93-94).

{¶34} Judy Beckett is a social service aide who supervised some of appellant's visits with K.B. and also provided her with transportation to some visits. Beckett testified about appellant's attendance. She stated that on one occasion appellant cancelled her visit because she had a fight with her sister. (Tr. 111). Beckett also testified that she had been helping appellant with transportation starting in April 2010. (Tr. 112). But she further testified that transportation help would have been available to appellant at any time prior to that if appellant had simply asked for it. (Tr. 112). Additionally, Beckett expressed some concerns about things she observed during appellant's visits. She stated that appellant only has two hours with K.B., yet she uses her cell phone frequently during that time. (Tr. 113). And during one visit, K.B. began to choke and appellant simply shouted from across the room for him to raise his arms up. (Tr. 114). Beckett also testified that appellant relies on April during her visits to help her with K.B. (Tr. 115-16). And she stated that April actually interacts more with K.B. than appellant does. (Tr. 122-23). Other than the choking episode, however, Beckett testified that she has never observed appellant behave inappropriately with K.B. (Tr. 129). And she stated that appellant always hugs and kisses K.B. at the end of a visit. (Tr. 129).

{¶35} April Hanke is appellant's good friend. Hanke testified that she allows appellant to babysit her three children and that appellant feeds them, bathes them, and helps them with homework. (Tr. 138-39). Hanke also stated that appellant stayed with her "off and on" from January 2009 through April 2009. (Tr. 139). And she stated that appellant took Vicodin for her back pain during that time. (Tr. 145).

**{¶36}** Jamie Cohen-Pickens is appellant's case manager. Cohen-Pickens testified that appellee became involved with K.B. at the time of his birth because appellant tested positive for Vicodin at the hospital and K.B. was drug exposed. (Tr. 148). She stated that K.B. was having some withdrawal issues. (Tr. 148). Cohen-Pickens further explained that at the time of K.B.'s birth, appellee had an open case with appellant regarding her daughter and K.B. was added to the existing case plan. (Tr. 149). As to K.B., she stated that appellant's case plan included establishing a residence, having a psychological evaluation done, following the guidelines of the psychologist, going to counseling, taking her medication, drug and alcohol evaluation, and parenting classes. (Tr. 150-51). Cohen-Pickens testified that the only part of her case plan that appellant completed was getting the water lines fixed at her residence. (Tr. 150). She stated that this non-compliance with the case plan had been ongoing for two years. (Tr. 151). Cohen-Pickens did testify that she had been to appellant's residence in February 2010, and the home was adequate. (Tr. 153). Cohen-Pickens next testified that appellant had completed parenting classes in West Virginia after the state took custody of that child. (Tr. 155-56).

**{¶37}** Cohen-Pickens further testified that she discussed transportation many times with appellant dating back to the previous summer. (Tr. 159). And she stated that appellee makes every effort to transport people when requested. (Tr. 160). Of the 99 scheduled visits with K.B., Cohen-Pickens stated that appellant attended only 37. (Tr. 161). Appellant canceled or failed to show up 56 times and the agency cancelled six times. (Tr. 162).

**{¶38}** As to K.B.'s sister, Cohen-Pickens testified that the court granted permanent custody to appellee and that decision was upheld on appeal. (Tr. 171). She stated that since that time, appellant's motivation to work on her case plan declined. (Tr. 171). And she stated that in his foster placement, K.B. visits with his sister. (Tr. 172).

**{¶39}** Finally, Cohen-Pickens testified that K.B. is in a foster-to-adopt home and his foster parents would love to adopt him. (Tr. 172). She stated that K.B. is

bonded with his foster family. (Tr. 172). And she opined that K.B. needs a legally secure placement, that returning him to appellant would not be a legally secure placement, and that granting his permanent custody to appellee would be in his best interest. (Tr. 173).

**{¶40}** Shannon Van Horn is appellant's neighbor. Van Horn testified that appellant has babysat for her seven-year old daughter since she was an infant. (Tr. 197). From August 2009 until October 2009, Van Horn stated that appellant stayed three to four days a week at her house. (Tr. 198). Van Horn also testified that appellant gets sick a lot. (Tr. 202). She further testified that there were many times when appellant would be waiting for a friend to pick her up to take her to visitation but then the friend would back out. (Tr. 204). She testified that appellant was upset whenever she could not get to a visit. (Tr. 206). And she stated that appellant was excited whenever she got to see K.B. (Tr. 206-207). Finally, Van Horn opined that appellant's home is suitable for a child and that appellant would be capable to raise K.B. (Tr. 209).

**{¶41}** Brent Clyburn is K.B.'s guardian ad litem. Clyburn opined that K.B. was in need of a legally secure placement. (Tr. 216). He further opined that appellant could not provide such a placement at this time but that a grant of permanent custody to appellee would ensure such a placement. (Tr. 216-17). Clyburn additionally expressed his belief that a grant of permanent custody to appellee was in K.B.'s best interest. (Tr. 217).

**{¶42}** Clyburn also testified that on March 17, 2010, he did a surprise visit at appellant's house to see if she was residing there. (Tr. 218). He stated that appellant was home and the house was "livable." (Tr. 218-19). At the time, Clyburn instructed appellant to contact him after some remodeling work was completed to arrange a home inspection. (Tr. 221). However, appellant never called. (Tr. 221).

**{¶43}** Finally, Clyburn testified that the visits he observed between appellant and K.B. were appropriate. (Tr. 225-26).

{¶44} Appellant was the last witness to testify. Appellant admitted that she did not complete her parenting classes. (Tr. 231). She blamed this on illness and lack of transportation. (Tr. 231). She further admitted to her poor attendance at counseling, which she again blamed on illness and lack of transportation. (Tr. 233). Appellant testified that she suffers from chronic bronchitis. (Tr. 234). She further testified that a case manager, whose name she could not remember, had told her that there was no transportation available to her all the way to her house. (Tr. 237). However, she also testified that although transportation was available to her, she did not understand this until March 2010. (Tr. 241). And she testified that she never asked if appellee could help her with transportation. (Tr. 242). Appellant stated that if she had known appellee would have provided her with transportation, she would have taken advantage of it. (Tr. 243).

{¶45} On cross-examination, appellant stated that there was no reason why she never got a driver's license. (Tr. 266). She simply stated that she could not afford a car, so there was no reason to get a driver's license. (Tr. 267). When asked why she has not been saving her money to buy a car, appellant stated that she did not have enough money to save after she pays the bills and buys "my cigarettes, my necessities." (Tr. 273).

{¶46} As to her medication, appellant stated that she takes a medication for her bipolar disorder. (Tr. 238). Appellant testified that since K.B.'s birth, there were times when she did not take her bipolar medication because she could not get to her doctor's appointments to get the refills. (Tr. 239). On one occasion, she went three to four months without taking her bipolar medication. (Tr. 240). Appellant further testified that although she does not presently take any medicine for her back pain, she did take Vicodin in the past. (Tr. 238). She stated that her doctors were okay with her taking Vicodin while she was pregnant. (Tr. 262).

{¶47} Appellant denied any drug or alcohol problems. She stated that she occasionally has a few drinks, but that is all. (Tr. 241).

**{¶48}** Appellant also testified about her visitation with K.B. She stated that she enjoys her time with her son and that she has bonded with him. (Tr. 246). As to her cell phone, appellant stated that she uses her cell phone to take pictures of K.B. and sometimes has to spend time deleting old pictures. (Tr. 246). Appellant further testified that she involves her sister April at the visits because she is K.B.'s family. (Tr. 249). However, she denied that April has more interaction with K.B. than she does. (Tr. 248-49). Appellant testified that she gets upset when her visits are over and feels that K.B. should be home with her. (Tr. 249-50).

**{¶49}** Additionally, appellant testified regarding her middle child, who was born in West Virginia. She stated that she was court-ordered to take parenting classes in West Virginia regarding that child. (Tr. 263). She stated that the court granted her custody of her child. (Tr. 264). However, four to five months later, she gave the child up for adoption. (Tr. 264). She stated that she did this for somebody special who could not have a child of their own. (Tr. 266).

**{¶50}** One other witness should be noted. Karen Campbell is a psychologist who evaluated appellant in January 2009. She appeared at the hearing ready to testify. The court stated that it would take judicial notice of her testimony given in a hearing involving K.B.'s sister. However, a court may not take judicial notice of prior proceedings before the court in another case, even when they involve the same parties and same judge. *In re J.C.*, 186 Ohio App.3d 243, 2010-Ohio-637, at ¶14. Any error by the court in taking judicial notice here was waived, however. Appellee requested the court to take judicial notice of Campbell's testimony and some additional testimony by Lal. (Tr. 8-9, 17-18). Appellant's counsel specifically stated that he had no objection to this. (Tr. 8-9, 17-18). Furthermore, as will next be discussed, the testimony given by the witnesses that we set out above clearly supports the trial court's judgment.

**{¶51}** The testimony supports the trial court's findings that it is in K.B.'s best interest to grant permanent custody to appellee and that K.B. cannot be placed with

either of his parents within a reasonable time or should not be placed with his parents.

**{¶52}** The applicable statutory best interest factors support the court's determination.

**{¶53}** First, K.B. has bonded with his foster parents who want to adopt him. And his foster parents bring him to visit with his biological sister, who is not in appellant's custody. Appellant testified that she too has bonded with K.B. However, it is uncertain how much she could have bonded with him considering she only attended 37 out of 99 visits, amounting to less than once a week for a year.

**{¶54}** Second, at the time of the hearing, K.B. had been in appellee's temporary custody for just two days shy of 12 consecutive months, since his birth.

**{¶55}** Third, both appellant's caseworker and K.B.'s guardian ad litem testified that K.B. is in need of a legally secure placement. Additionally, both opined that returning K.B. to appellant would not be a legally secure placement.

**{¶56}** Finally, appellant has already had her parental rights involuntarily terminated with respect to K.B.'s sister.

**{¶57}** In addition to these statutory factors, other evidence further supports the trial court's determination. For instance, appellant attended only one of ten scheduled counseling appointments, four out of 12 parenting classes, and 37 of 99 visits with K.B. Appellant's poor attendance caused her counselor to cancel her as a client and the parenting class instructor to dismiss her from the class. For her poor attendance, appellant always cited lack of transportation or illness. However, appellant failed to take advantage of transportation offered by North Point and never asked her caseworker if appellee could help her with transportation. Further, appellant had no excuse for not obtaining a driver's license. And she prioritized buying cigarettes higher than saving money for a car. Additionally, appellant voluntarily gave up custody of her middle child. Finally, both appellant's caseworker and K.B.'s guardian ad litem opined that it was in K.B.'s best interest that the court grant his permanent custody to appellee.

{¶58} Furthermore, the evidence demonstrated that K.B. cannot be placed with either of his parents within a reasonable time or should not be placed with his parents. Firstly, K.B.'s father surrendered his parental rights. So K.B. cannot be placed with him. Secondly, the testimony from appellant's counselors, case manager and K.B.'s guardian ad litem painted a picture of a young child who needs a permanent placement and a mother with numerous psychological, medical and transportation issues who showed no real sign of being able to address these issues in order to provide a secure home for her child in a reasonable time.

{¶59} Based on all of these factors, we cannot conclude that the trial court abused its discretion in granting permanent custody of K.B. to appellee.

{¶60} For the reasons stated above, the trial court's judgment is hereby affirmed and counsel's motion to withdraw is granted.

Vukovich, P.J., concurs.

DeGenaro, J., concurs.