The STATE of Ohio, Appellee,

v.

BARR, Appellant.

[Cite as *State v. Barr*, 158 Ohio App.3d 86, 2004-Ohio-3900.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 03 CO 44.

Decided July 16, 2004.

Robert L. Herron, Columbiana County Prosecuting Attorney, and John E. Gamble, Assistant Prosecuting Attorney, for appellee.

Atway & Cochran, Scott R. Cochran and Jennifer C. Kirr, for appellant.

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellant Andy Barr appeals from the decision of the Columbiana Court of Common Pleas upholding his conviction of fleeing and eluding in violation of R.C. 2921.331(B), a fourth-degree felony. Although more were raised, the issues we must resolve are (1) whether venue was proven beyond a reasonable doubt despite the fact that no express evidence of venue was provided and (2) whether trial counsel was ineffective for allegedly "opening the door" to previously suppressed evidence.

{¶ 2} First, Ohio's general criminal venue statute vests power to hear a criminal case in any court that has subject matter jurisdiction and is situated in the county wherein the offense occurred. R.C. 2901.12(A). Venue is not a material element of any crime but, unless waived, is a fact that must be proven at trial beyond a reasonable doubt. However, the venue of a crime is sufficiently proved even when there is no direct testimony that the offense charged occurred in the county of prosecution except as this appears to be so from frequent allusions to geographical locations placing them in a city within the county. Because it was clear from the numerous references to cities, towns, and streets in this case, we conclude that venue was proven beyond a reasonable doubt.

{¶ 3} Second, to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that deficient performance prejudiced the defense. Because counsel was ineffective for allowing previously suppressed evidence to be admitted at trial and Barr was clearly prejudiced by these actions, the judgment of the trial court is reversed, Barr's conviction is vacated, and this cause is remanded for a new trial.

Facts and Standard of Review

{¶ 4} Officer Cresanto of the village of Leetonia witnessed Barr riding his motorcycle west on State Route 344. Upon approaching the intersection of Washington Street Extension and State Route 344, the officer saw Barr accelerate and lift his front wheel off the ground. The officer activated his lights and siren and attempted to stop Barr. The officer pursued Barr until Barr turned left onto Cunningham Road, where there was loose gravel. The officer slowed down and lost track of the motorcycle. Barr continued down Cunningham Road and crashed his motorcycle. He was able to walk to his girlfriend's house and call the police to report the accident.

{¶ 5} Meanwhile, Officer Cresanto was informed by a resident that the motorcycle had not driven past, so he backtracked until he found Barr's abandoned motorcycle. Officer Cresanto called Leetonia's police department to notify it of the crash. An officer from Salem's city police department was dispatched to the crash site. The officers traced the license plate of the motorcycle to Barr. Barr was then picked up and returned to the scene of the accident. Barr was later taken to Leetonia's police department, where a written statement was taken from him. In this statement, Barr admits that he thought he may have been followed by the police.

{¶ 6} Barr was secretly indicted for violating R.C. 2921.331(B), fleeing and eluding, a fourth-degree felony. Barr filed a motion to suppress the statement he gave to Officer Cresanto. The trial court granted the motion, holding:

{¶ 7} "The instant case is clear that defendant's statement was induced by the promise the police officers made that he would be charged with a misdemeanor in mayor's court and be free to go home as opposed to the possibility of being charged with a felony and taken to county jail. Given the totality of the circumstances it is the Court's opinion that the statement given was not voluntary and therefore is ordered suppressed. The State may not use it in evidence in its case-in-chief."

{¶ 8} The case was then tried before a jury. Upon the state's resting its case, Barr moved for a directed verdict pursuant to Crim.R. 29, but the motion was denied. Barr put on his case and renewed his motion for directed verdict, which was once again denied. The jury came back with a guilty verdict on the sole count of fleeing and eluding.

{¶ 9} As his first of three assignments of error, Barr claims:

■ {¶ 10} "The evidence supporting Appellant's conviction was insufficient as a matter of law to prove the conviction beyond a reasonable doubt."

{¶ 11} Barr challenges his conviction, claiming that no direct evidence regarding venue was presented by the state. The state claims Barr has waived this issue on appeal. Errors that arise during the course of a trial that are not brought to the attention of the trial court by objection or otherwise are waived and may not be raised on appeal, unless the errors rise to the level of plain error. *State v. Napier* (1995), 105 Ohio App.3d 713, 722, 664 N.E.2d 1330. When an appellant, as here, did not specifically argue the insufficiency of proof of venue in making his motion for judgment of acquittal at trial, it would be proper to consider proof of venue waived; however, we find it appropriate to consider the argument under a plain-error analysis, since the failure to prove venue does affect a substantial right. Crim.R. 52(B).

{¶ 12} To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See *State v. Tichon* (1995), 102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips* (1995), 74 Ohio St.3d 72, 83, 656 N.E.2d 643.

### Establishing Venue

{¶ 13} The Ohio Constitution guarantees to its citizens "a speedy trial by an impartial jury of the county in which the offense is alleged to have been committed." Section 10, Article 1, Ohio Constitution. The primary purpose of this constitutional provision is to fix the place of trial. *State v. Fendrick* (1907), 77 Ohio St. 298, 300, 82 N.E. 1078. This constitutional principle was codified by the legislature in R.C. 2901.12, which provides, "[T]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed."

{¶ 14} Thus, Ohio's general criminal venue statute vests power to hear a criminal case in any court that has subject matter jurisdiction and is situated in the county wherein the offense occurred. R.C. 2901.12(A). Venue is not a material element of any crime but, unless waived, is a fact that must be proven at trial beyond a reasonable doubt. *State v. Headley* (1983), 6 Ohio St.3d 475, 477, 6 OBR 526, 453 N.E.2d 716; *State v. Draggo* (1981), 65 Ohio St.2d 88, 90, 19 O.O.3d 294, 418 N.E.2d 1343.

{¶ 15} In reviewing the record, it is apparent that venue was adequately, albeit not directly, established for this crime. The Supreme Court of Ohio has

permitted venue to be established by the totality of the facts and circumstances of the case. See *Headley.* Additionally, the trial court has broad discretion to determine the facts that would establish venue. *Toledo v. Taberner* (1989), 61 Ohio App.3d 791, 573 N.E.2d 1173. With that being said, due to the nature of Barr's challenge, we note the distinction between the determination of where venue is proper and proof of venue at trial. The Sixth District emphasized this dissimilarity in *State v. DeBoe,* 6th Dist. No. H–02–057, 2004-Ohio-403, 2004 WL 190068, explaining, "The trial court determines whether a case is properly venued in its court. The jury then determines whether sufficient evidence has been presented to establish venue and that a crime took place within that venue." *DeBoe,* ¶ 42.

{¶ 16} The difference between the two determinations is particularly evident in the present case. Interestingly, it appears that the state has demonstrated that the alleged crime occurred in a particular location; however, the state failed to provide direct evidence that the location was in Columbiana County.

{¶ 17} This court has previously addressed the issue of the prosecutor's failing to directly prove venue, starting with *State v. Rowley* (Feb. 11, 1988), 7th Dist. No. 86–C–52, 1988 WL 12972. In that case, there were repeated references in the record to the fact that the offense took place in East Liverpool, Ohio. This court concluded that the state had provided sufficient evidence to establish jurisdiction by the common pleas court, including venue, explaining that Evid.R. 201(B)(1) permits judicial notice of generally known facts within the territorial jurisdiction of the trial court. So, the fact that East Liverpool is a city within Columbiana County could be judicially noticed.

{¶ 18} This court additionally noted that, 42 Ohio Jurisprudence 3d 271–272, Evidence and Witnesses, Section 53, stated: "The courts will take judicial notice of the existence of particular cities and villages in the state, their location, past history, that a particular city is in a certain county * * *." (Footnotes omitted.)

{¶ 19} This court next expounded on that principle in *State v. Cochran* (Aug. 20, 1990), 7th Dist. No. 88–C–13, 1990 WL 121871. The record indicated that the incident occurred in Lisbon, Ohio. This court concluded that when a witness testifies about a particular location without giving the name of the county, judicial notice may be taken that the location is situated in a particular county, citing 26 Ohio Jurisprudence 3d, 431–432, Criminal Law, Section 685, which stated:

{¶ 20} "The venue of a crime is sufficiently proved although there is no direct testimony that the offense charged occurred in the county of prosecution except as this appears to be so from the names of the streets where the parties lived and frequent allusions to incidents locating them in a city within the county. Venue may be established by proof that the accused was seen at a place in a particular county and that the crime was committed at that place in that county." Id.

{¶ 21} Further, in *State v. Shuttlesworth* (1995), 104 Ohio App.3d 281, 661 N.E.2d 817, this court determined that the state never precisely established that the alleged crime had, in fact, occurred in Harrison County, Ohio. This court concluded, however, that the state offered sufficient evidence that the crime occurred in Cadiz, a city located in Harrison County.

{¶ 22} Finally, in *State v. Combs* (Nov. 15, 1999), 7th Dist. No. 97–JE–65, 1999 WL 1029518, the appellant claimed that Jefferson County was never actually mentioned in the transcript and that there were no facts presented to prove that the crime took place in Jefferson County. This court held that when a witness testifies about a specific location without giving the name of the county, judicial notice may be taken that the location is in a particular county. Id. at 2, 1999 WL 1029518, citing *Cochran*. More specifically, testimony that the crime took place in Steubenville was sufficient proof that it occurred in Jefferson County. *Combs*. See, also, *State v. Collins* (1977), 60 Ohio App.2d 116, 14 O.O.3d 94, 396 N.E.2d 221; *State v. Gray* (Feb. 19, 1998), 4th Dist. No. 97CA2284, 1998 WL 103325; *Linndale v. Krill*, 8th Dist. No. 81881, 2003-Ohio-1535, 2003 WL 1564095; *State v. Bell* (Apr. 30, 2001), 12th Dist. No. CA99–07–122, 2001 WL 432737; *State v. Robinson* (Oct. 26, 1994), 9th Dist. No. 2320–M, 1994 WL 592695; *Willoughby v. Scott* (Dec. 8, 1995), 11th Dist. No. 94–L–146, 1995 WL 869958; *State v. Combs* (Jan. 28, 2000), 2nd Dist. No. 98CA137, 2000 WL 84563.

{¶ 23} In the present case, there was evidence relating to the location of the offense via Officer Cresanto's testimony. More specifically, Officer Cresanto testified that at the time of the offense, he was employed by the Leetonia Police Department. He further testified that he first saw Barr when Officer Cresanto was approaching the intersection of Washington Street Extension and State Route 344. After he saw Barr accelerate and lift his front wheel off the ground, Officer Cresanto pulled out into the intersection with his lights and sirens on and attempted to stop him. They both continued west on State Route 344. Officer Cresanto elaborated that the intersection was the last entrance from Leetonia onto Route 344 heading west towards Salem. Officer Cresanto then testified that he followed Barr when Barr turned south onto Cunningham Road towards Lisbon.

{¶ 24} Officer Cresanto lost sight of Barr but was informed by a man in a white pickup truck that he had seen a motorcycle in the weeds off to the side of the road. Officer Cresanto backtracked and located the motorcycle. Officer Cresanto then called his dispatch, and soon after, officers from Perry Township arrived to help, along with officers from the Leetonia Police Department.

{¶ 25} In light of this testimony describing the intersections of streets and towns involved in the chase, we conclude that the state proved beyond a reasonable doubt the location of the violation and that the trial court did not

abuse its discretion by taking judicial notice that the location of the offense was within Columbiana County. Accordingly, the fact that the prosecution did not elicit testimony expressly stating that the offense occurred in Columbiana County was harmless error, if error at all. This assignment of error is meritless. However, we caution that establishing venue in this manner is not the best practice.

## Ineffective Assistance of Counsel

{¶ 26} Barr's next assignment of error that we will address alleges:

{¶ 27} "Defendant/Appellant's counsel was ineffective in violation of his constitutionally protected right to effective counsel pursuant to U.S. Const. amend. VI and XIV and Ohio Const. art I sections 1 and 10."

{¶ 28} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. *State v. Smith* (1985), 17 Ohio St.3d 98, 17 OBR 219, 477 N.E.2d 1128. In order for a court to conclude that counsel was ineffective, the defendant must overcome the presumption that, under the circumstances, the allegedly ineffective action might be considered sound trial strategy. *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 29} Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. The defendant must demonstrate more than vague speculations of prejudice to show that counsel was ineffective. *State v. Otte* (1996), 74 Ohio St.3d 555, 565, 660 N.E.2d 711. To establish prejudice, a defendant must show that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. A reasonable possibility must be a probability sufficient to undermine confidence in the outcome of the case. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. *Smith.*

{¶ 30} When evaluating an ineffective assistance of counsel claim, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. A court must presume that numerous choices, perhaps even disastrous ones, are made on the basis of a tactical decision and do not constitute ineffective assistance of counsel. *State v. Carpenter* (1996), 116 Ohio App.3d 615, 626, 688 N.E.2d 1090, citing *Bradley* at 144, 538 N.E.2d 373.

{¶ 31} In the present case, Barr points to one specific alleged error made by counsel that he argues was so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. Barr claims he was prejudiced when counsel opened the door to the admission of evidence that had previously been suppressed.

{¶ 32} Specifically, when trial counsel was cross-examining Officer Cresanto, he asked the following questions:

{¶ 33} "Did you ever ask Andy why he didn't pull over for you?"

{¶ 34} "Did he ever tell you that he didn't see you?"

{¶ 35} Prior to the redirect of Officer Cresanto, the parties approached the bench for an off-the-record discussion. Shortly thereafter, the following exchange occurred on redirect:

{¶ 36} "Q: Officer Cresanto, Mr. Powers asked you if the Defendant told you why he did not slow down, and asked you—and he further asked you—if you had occasion—or if he had explained to you why he didn't stop. And you provided certain responses to him.

{¶ 37} "Did you ask the Defendant whether while accelerating west on Route 344, was he aware that there was a police cruiser with lights and sirens on behind him? Did you ask him that question?

{¶ 38} "A: Yes I did.

{¶ 39} "Q: Do you recall what his response was? And if you have to refer to your notes, please refer to your notes.

{¶ 40} "A: Okay his response was, 'I wasn't positive, but in the distant windblurring vision I thought I seen lights of some sort hoping it wasn't the police, but I did not hear the sirens.' And it's initialed A.B."

{¶ 41} Later, Officer Cresanto read the following from Barr's statement:

{¶ 42} "A: Uh, according to my notes, 'I looked back once near Main Street, and wasn't sure if I seen his chrome bug guard glittering, or lights, either way I stayed at a high rate of speed to show off, or to get out of sight of the police, not knowing who was really back there.'

{¶ 43} "A: Slighty over one hundred miles per hour, I slowed down at Cunningham Road to about fifty five or sixty miles per hour, thinking it was the cops."

{¶ 44} Had counsel not opened the door, these statements would have been inadmissible, since the trial court had previously granted Barr's motion to suppress these statements to the police. Although it could be argued that these questions were part of counsel's strategy, it's hard to imagine why he would open the door with these questions. Similarly, it could be argued that counsel did not open the door to this line of questioning. However, this begs the question of why counsel did not object to this prejudicial line of questioning as it was occurring, especially since it was declared inadmissible prior to trial.

{¶ 45} Barr explains that the only evidence admitted against him regarding his willfulness in eluding the officers prior to the alleged error was Officer Cresanto's testimony that as they were gaining speed, he said, "I then seen Andy over his left shoulder look in my direction." After that he "could hear exhaust, it got very loud, and a black puff of smoke came out. He then accelerated at a higher rate of speed." Barr argues that this statement alone would probably not be sufficient to prove that he had willfully eluded the officers. We agree that the state's case against Barr prior to counsel's mistake was insufficient. Accordingly, counsel's actions, which opened the door to the suppressed evidence, were most likely prejudicial to Barr.

{¶ 46} Because we find no explanation for counsel's behavior that in effect sealed Barr's conviction, we conclude that Barr received ineffective assistance. This assignment of error is meritorious.

{¶ 47} Barr's remaining assignment of error alleges:

{¶ 48} "Appellant's conviction is against the manifest weight of the evidence."

{¶ 49} We have determined that counsel was ineffective. Because resolution of that issue is dispositive of the appeal, we need not address the merits of this assigned error. App.R. 12. To do so would result in an advisory opinion.

{¶ 50} In conclusion, the prosecution did establish venue beyond a reasonable doubt, and Barr's first assignment of error is meritless. Barr's second assignment of error is meritorious as Barr's counsel was ineffective for causing a previously suppressed statement to be brought into evidence at trial. Barr's third assignment of error is moot due to the resolution of the second assignment of error.

{¶ 51} Accordingly, the judgment of the trial court is reversed, Barr's conviction is vacated, and this cause is remanded to the trial court for a new trial.

Judgment reversed
and cause remanded.

GENE DONOFRIO, J., concurs.

JOSEPH VUKOVICH, J., dissents.

VUKOVICH, J., dissenting.

{¶ 52} I respectfully dissent from the decision reached by my colleagues. Although I agree with their disposition of Barr's first assignment of error, I must respectfully differ from their conclusion that the second assignment of error, raising a claim of ineffective assistance of trial counsel, is meritorious. I agree with the majority that counsel's performance was deficient; however, I do not agree that the deficient performance amounted to prejudice. Thus, I would affirm the trial court's decision.

{¶ 53} In paragraph 45, the majority states that the only other evidence admitted against Barr to show that he willfully eluded the officer is Officer Cresanto's testimony that Barr looked over his left shoulder in Officer Cresanto's direction and then accelerated. The majority claims this creates an insubstantial case that Barr willfully eluded officers and, therefore, prejudice is established. I disagree with this conclusion.

{¶ 54} To establish prejudice, a defendant must show that there is a reasonable possibility that, but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. A reasonable possibility must be a probability sufficient to undermine confidence in the outcome of the case. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. In other words, a court making the prejudice inquiry must ask whether the defendant has met the burden of showing that the decision reached would "reasonably likely have been different absent the errors." Id. at 143, 538 N.E.2d 373, citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 55} Contrary to the majority's implication, Barr did not need to make a statement to Officer Cresanto or anyone else that "he saw the officer and then sped off" in order to establish that he willfully eluded the officer. The culpability of an accused dwells in his mind and is difficult to prove by the direct testimony of a third person; however, it can be proven by surrounding facts and circumstances (circumstantial evidence). *State v. Treesh* (2001), 90 Ohio St.3d 460, 484–485, 739 N.E.2d 749. Circumstantial evidence and direct evidence inherently possess the same probative value. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus.

{¶ 56} Here, there is circumstantial evidence that is sufficient to prove that Barr willfully (i.e., voluntarily and intentionally) eluded the police officer. Officer Cresanto testified that he was on Washington Street approaching Route 344

when he saw Barr traveling west on Route 344. Upon approaching the Washington Street Route 344 intersection, Officer Cresanto saw Barr accelerate and lift his front wheel off the ground. Officer Cresanto then activated his lights and siren and pursued Barr. Officer Cresanto testified that while he was in pursuit of Barr, with his lights and siren activated, Barr looked over his left shoulder in Officer Cresanto's direction. Cresanto stated that when Barr looked over his shoulder, there were no cars between the cruiser and Barr. He then testified that after Barr looked over his shoulder, Barr accelerated.

{¶ 57} This testimony leads to the conclusion that Barr willfully eluded the police. He heard the sirens, looked over his shoulder to see where the sirens were coming from, saw the police cruiser, since it was the first car behind him, and then accelerated to elude the cruiser. Thus, the prejudice element of ineffective assistance of counsel has not been met. Given the above evidence, I cannot conclude that the decision reached would reasonably likely have been different absent trial counsel's error. This evidence alone is sufficient to prove that Barr willfully eluded the officer. Consequently, I find no merit with Barr's second assignment of error.

{¶ 58} Having found no merit with this assignment of error, I will now address Barr's third and remaining assignment of error. The third assignment error asserts that the conviction was against the manifest weight of the evidence.

{¶ 59} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390, 678 N.E.2d 541. However, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 60} Barr testified that he never saw a "cop" and that he never looked back because looking back would be too dangerous. However, this testimony contradicts Officer Cresanto's testimony. As explained above, Officer Cresanto testified that Barr looked over his left shoulder toward Officer Cresanto and then accelerated. The jury was free to believe all, part, or none of the testimony of each witness who appeared before it. *State v. Caldwell* (1992), 79 Ohio App.3d

667, 607 N.E.2d 1096. It was up to the jury to determine which testimony to accept as true. *DeHass,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Considering all testimony and evidence, it cannot be stated that the jury clearly lost its way in finding Barr guilty of eluding an officer. Thus, the third assignment of error also lacks merit.

{¶ 61} For the reasons stated above, I would affirm the trial court's decision.