[Cite as *State v. Lamb*, 2013-Ohio-5683.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    12 MA 224 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| JAMES LAMB, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:          Criminal Appeal from County Court No.
                                   4, Case No. 12CRB816.


JUDGMENT:                          Affirmed.


APPEARANCES:
For Plaintiff-Appellee:            Attorney Paul Gains
                                   Prosecuting Attorney
                                   Attorney Ralph Rivera
                                   Assistant Prosecuting Attorney
                                   21 West Boardman Street, 6th Floor
                                   Youngstown, Ohio  44503


For Defendant-Appellant:           Attorney Douglas King
                                   91 West Taggart Street
                                   P.O. Box 85
                                   East Palestine, Ohio  44413


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                   Dated:  December 13, 2013

VUKOVICH, J.

{¶1}   Defendant-appellant James Lamb appeals the decision of Mahoning County Court No. 4 finding him guilty of child endangering in violation of R.C. 2919.22(B)(1).   Lamb asserts that the state failed to present sufficient evidence. Specifically, he contends that the state failed to establish venue beyond a reasonable doubt.   For the reasons expressed below, this argument has no merit.   The conviction and sentence are hereby affirmed.

<u>Statement of Case and Facts</u>

{¶2}   In late June 2012, K.B., an eight year old child diagnosed with epilepsy, Landau-Kleffner syndrome, behavioral optometry, and PDD, which is on the autism spectrum, was visiting his grandma Lori Hunter.   Tr. 9, 14.   During the visit, Hunter was giving K.B. a bath and noticed bruising on K.B.'s butt, leg and shoulder, scratches all over him, and what appeared to be rug burn on his back.   Tr. 14, 21. She described the bruising on his butt as being a large handprint.   Tr. 15-16.

{¶3}   Because those injuries alarmed her, she went to the Struthers Police Department the next morning; she lives in Struthers.   Tr. 17.   They directed her to go to the Austintown Police Department; K.B. lives with his mother in Austintown and it was alleged that the injuries occurred at her home in Austintown.   Tr. 18, 99, 131; State's Exhibit B - Katrina Bennett's Voluntary Statement to Police.   At the Austintown Police Department, Hunter made a statement, an officer took photographs of the injuries, and K.B. was questioned.

{¶4}   As a result of the statement, questioning, and photographs, Austintown Police Department asked Lamb and Katrina Bennett, K.B.'s mother, to come to the station for questioning.   Both Lamb and Bennett voluntarily gave statements.

{¶5}   Bennett's statement indicated that she has asked Lamb to help her with K.B.   She explained that Lamb uses military exercises as punishment for K.B., such as an army crawl and standing against a wall holding a broom.   She stated on Monday June 25, 2013, Lamb spanked K.B., which consisted of three swats on the butt.   She further explained, "I believe that the scratches on the stomach and arms are from the crawling on the ground.   I'm not positive but the abrasion on the back

are from all I can think of is his temper tantrums rubbing and pushing himself [K.B.] across the carpet." State's Exhibit B.

**{¶6}** Lamb's statement indicated that when K.B. gets "out of control", Lamb has him "low crawl" 24-30 feet or stand against a wall holding a broom for 30 to 45 seconds. He admitted to spanking K.B. and stated that it happened once. He also indicated that when K.B. was low crawling, K.B. was scraping his chest/stomach on the ground. State's Exhibit C.

**{¶7}** Thereafter, Lamb was charged with child endangering in violation of R.C. 2919.22(B)(1) and Bennett was charged with child endangering in violation of R.C. 2919.22(A). 07/13/12 Indictments.

**{¶8}** Lamb and Bennett were tried together before the bench. At trial, the above information, including Lamb's and Bennett's statements and the photographs of K.B.'s injuries, was admitted. Also discussed was K.B.'s behavior. K.B., as an autistic child, has what Bennett and Hunter describe as temper tantrums. Tr. 11, 115. Hunter explained that during the tantrums, K.B. tries to hit you and if he cannot get to you he will try to hurt himself, he calls you names, and also beats his head on the floor. Tr. 30. Bennett's testimony confirms that and she also stated that during the tantrums he will scream "at the top of his lungs," and spit. Tr. 115-116. During her testimony, a video of one of the tantrums he had on June 25, 2013 was played. This video confirms that he does hit himself and others, scream, throw things, and pushes himself on the carpet.

**{¶9}** Testimony from Lamb and Bennett also indicated on June 25, 2013, which is when the acts that constituted child endangering occurred, Bennett was at her "wits end" and asked Lamb for help. Tr. 111, 126. K.B. had been having tantrums almost all day long. Bennett indicated that she had tried the "burrito" wrap that the doctors had suggested to help him calm down, but that had not worked. Both Bennett and Lamb indicated that when Lamb arrived at her house, Lamb spanked K.B., had him stand at the wall with a broom and had him doing army crawls. Tr. 96-97, 103, 136-142.

**{¶10}** Bennett also testified that the bruise on K.B.'s butt had occurred prior to June 25, 2013 and was the result of falling out of a bounce house and landing on his butt on the cement sidewalk. Tr. 124.

**{¶11}** After hearing all the evidence, the trial court found both Bennett and Lamb guilty of the charges against them. Lamb was sentenced to 180 days, 175 days were suspended. He was ordered to pay a $250 fine plus costs, and was further ordered to have no contact with the victim, K.B.

**{¶12}** Lamb appeals from that conviction and sentence.

First Assignment of Error

**{¶13}** "Defendant/appellant was entitled to his criminal rule 29 judgment of acquittal because the state failed to establish venue beyond a reasonable doubt."

**{¶14}** Venue is not a material element of the offense, yet it is a fact that must be proved beyond a reasonable doubt, unless it is waived by the defendant. *State v. Headley,* 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983); *State v. Barr,* 158 Ohio App.3d 86, 2004-Ohio-3900, 814 N.E.2d 79, ¶ 14 (7th Dist.). Typically the prosecutor will directly establish venue. However, it does not need to be proven in express terms. *State v. Chintalapalli,* 88 Ohio St.3d 43, 45, 723 N.E.2d 111 (2000). Rather, it can be established by the totality of facts and circumstances viewed in the light most favorable to the state. *Id.*

**{¶15}** Pursuant to R.C. 2901.12(A), venue lies in any jurisdiction in which the offense or any element of the offense was committed. "Venue is satisfied where there is a sufficient nexus between the defendant and the county of the trial." *State v. Chintalapalli,* 88 Ohio St.3d 43, 45, 723 N.E.2d 111 (2000).

**{¶16}** At the close of the state's case in chief, Lamb moved for acquittal pursuant to Crim.R. 29 making the general argument that the state failed to prove the elements of child endangering by proof beyond a reasonable doubt. Tr. 75-76. The state answered the argument insisting that it had provided sufficient evidence on every element of the offense, including venue. Tr. 76. The trial court then denied the motion. Tr. 76.

**{¶17}** Prior to addressing whether the state presented evidence to establish venue, it is noted that some appellate courts have concluded that a general argument that the elements of the offense have not been proven is not sufficient to challenge venue. *State v. Mielke*, 12th Dist. No. CA2012-08-079, 2013-Ohio-1612, ¶ 16 (general argument for Crim.R. 29 motion, thus venue deemed not raised and therefore waived for purposes of appeal); *State v. Shedwick*, 10th Dist. No. 11AP-709, 2012-Ohio-2270, ¶ 37 (no objection to venue was made during the Crim.R. 29 motion or at any time during the trial); *State v. Dumas,* 10th Dist. No. 98AP–581, 1999 WL 77196 (Feb. 18, 1999) (appellant's Crim.R. 29 motion was insufficient to challenge venue). Therefore, in that instance, the issue is deemed waived. *Mielke* at ¶ 16; *Shedwick* at ¶ 37; *Dumas*. However, these courts have concluded that it is appropriate to consider the argument under a plain-error analysis. *Mielke* at ¶ 16-17; *Shedwick* at ¶ 38-39 (appropriate to consider the argument under a plain-error analysis because the failure to prove venue affected a substantial right); *Dumas*.

**{¶18}** Therefore, on that basis, venue may have been waived and the issue raised can only be reviewed under a plain-error analysis. A plain error is any error or defect affecting substantial rights. Crim.R. 52(B).

**{¶19}** That said, regardless of what standard is used, there was sufficient evidence presented to establish venue. In the state's case in chief, Hunter testified that the injuries occurred while K.B. was with his mother. Tr. 16. She indicated that she went to Struthers Police Department to make a police report; however, they directed her to Austintown Township Police Department, the correct agency to look into the matter. Tr. 17-18. This is an indication that Austintown Township is the jurisdiction in which the incident occurred. Austintown Township Detective-Sergeant Jordan Yacovone investigated the matter and testified at trial. Tr. 45-73. During his testimony, Bennett's written statement was identified and discussed. Tr. 52-57. This statement was admitted into evidence and lists her address as Austintown. State's Exhibit B; Tr. 75. Furthermore, during the defendants' cases in chief, both Lamb and Bennett acknowledged that the conduct that the trial court determined to constitute child endangering occurred at Bennett's home. Tr. 85, 99, 131.

**{¶20}** Therefore, although the state could have done a better job at establishing venue, given the testimony and evidence, venue was sufficiently established. This assignment of error lacks merit.

<u>*Anders* Assignment of Error</u>

**{¶21}** "Defendant/appellant's conviction is against the manifest weight of the evidence."

**{¶22}** After briefing the above assignment of error, counsel sets forth an *Anders* Assignment of Error. In the second paragraph, counsel states that Lamb believes his conviction is against the manifest weight of the evidence, specifically that Lamb believes that he, in loco parentis, was entitled to administer the discipline he delivered to K.B. Counsel disagrees with this position, but sets it forth as an *Anders* assignment of error. The state's brief does not address the *Anders* assignment of error and asks us for guidance on how to proceed. The state contends that if we do address this assignment and find that it has potential merit, we should assign counsel to fully brief it and then give the state the opportunity to respond.

**{¶23}** The appellate brief filed in this case is a hybrid brief; it raises one merit assignment of error and one *Anders* assignment of error.

**{¶24}** The Second and the Tenth Appellate District Courts have found such a hybrid brief to be improper and have struck the *Anders* assignments. *State v. Vaughn*, 2d Dist. No. 1564, 2002-Ohio-4975, ¶ 4; *State v. Saaty*, 10th Dist. No. 96APA09-777 (Mar. 4, 1997). The position that striking the *Anders* assignment of error is supported by the fact that a criminal defendant has a right to act *pro se* or to have counsel, but he has no right to "hybrid representation." *See State v. Thompson*, 33 Ohio St.3d 1, 6-76, 514 N.E.2d 407 (1987) (thus defendant cannot act as co-counsel at trial). The procedure is further supported by the fact that *Anders* deals with the situation where counsel finds the case to be "wholly frivolous" and seeks to withdraw. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 .E.2d 493 (1967).

**{¶25}** That said, we note that the Second Appellate District in one instance did consider a defendant's pro se supplemental assignment of error when it had mistakenly permitted the defendant to supplement; the court specifically noted that

allowing the defendant to supplement was an administrative mistake. *State v. Myles*, 2d Dist. No. 21451, 2007-Ohio-189, ¶ 2-3, 16 (and stating that although they mistakenly permitted the defendant to supplement, it was not done pursuant to *Anders* and thus no independent review of the record would occur). *See also State v. White*, 71 Ohio App.3d 550, 551, 594 N.E.2d 1087 (4th Dist.1991) fn.1 (stating that pro se brief was improper, but court would "choose" to address it). However, those facts are not present here.

**{¶26}** We agree with the reasoning of our sister districts that hybrid briefs are inappropriate and that *Anders* assignments of error should be struck. Therefore, the Anders assignment of error is struck and this court will not consider it.

## Conclusion

**{¶27}** In conclusion, the sole assignment of error lacks merit; sufficient evidence was produced to establish venue. The *Anders* assignment of error is struck and will not be addressed.

**{¶28}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs in part, dissents in part; see concurring/dissenting Opinion.
DeGenaro, P.J., concurs.

DONOFRIO, J. concurring in part and dissenting in part:

For the following reasons I respectfully dissent with the portion of the majority's decision dealing with the hybrid brief issue. I concur with the majority's resolution of appellant's initial assignment of error.

Firstly, in the past, this court has considered assignments of error such as the "*Anders*" manifest weight assignment set out in the instant appeal. For instance, this court was faced with a hybrid brief where the appointed counsel raised six assignments of error and also raised two additional assignments of error he did not feel constituted reversible error. In that case, we addressed both the officially-raised assignments of error as well as the alleged-meritless assignments of error. See

*State v. Williams*, 7th Dist. No. 10-MA-13, 2011-Ohio-2463. We have also been faced with cases where the appointed counsel filed no merit briefs and requests to withdraw, yet counsel still raised "arguable" assignments of error. *In the Matter of H.M.*, 7th Dist. No. 11-NO-381, 2011-Ohio-6376; *State v. Tusin*, 7th Dist. No. 10-MA-29, 2011-Ohio-2629; *In re K.B.*, 7th Dist. No. 10-BE-13, 2010-Ohio-6083; *In re K.B.*, 7th Dist. No. 09 BE 24, 2010-Ohio-1015. This court considered the "arguable" assignments of error in each of these cases. *Id.*

Secondly, counsel states that he is mentioning the manifest weight assignment of error only because his client asked him to do so. This court has held that while an appellant does not have the constitutional right to act as his own co-counsel where the state has appointed counsel to represent him, we have the discretion whether to address arguments raised in a pro se brief when the appellant is represented by counsel who has already filed a brief. *State v. Bryant*, 7th Dist. No. 99-CA-135, 2001 WL 1568878 (Dec. 4, 2001). Similarly, this court has discretion to consider assignments of error proposed by counsel at the appellant's insistence. I would exercise this discretion and consider the *Anders* assignment of error.

Thirdly, even the Second District, one of the two districts on which the majority relies, has reviewed a hybrid brief when the court deemed it equitable to do so. *State v. Myles*, 2d Dist. No. 21451, 2007-Ohio-189. Thus, despite its decision in *State v. Vaughn*, 2d Dist. No. 1564, 2002-Ohio-4974, the Second District has recognized that there are occasions where review of a hybrid brief may be allowed.

Fourthly, under the majority's decision, appellant's only recourse now is to file an application to reopen his appeal pursuant to App.R. 26(B). In an application to reopen, appellant could argue that his counsel was ineffective for failing to raise a manifest weight of the evidence assignment of error. This would require an application to reopen, a response from the state, a decision by this court granting or denying the application, and, if we granted the application, another set of briefs from the parties and another decision by this court. However, if we were to simply consider the assignment of error now, it would serve judicial economy by examining

the manifest weight issue along with counsel's assignment of error and rendering a single decision instead of bringing the case before the court for a second time.

This is not an endorsement of hybrid representation. It is a statement that we, as a reviewing court, must address substantive claims raised on appeal, whether though assignments of error in a merit brief, a pro se litigant's brief in an *Anders*-type case, or a sua sponte plain error analysis required by due process.

In sum, for the above reasons, I would consider the *Anders* manifest weight assignment of error.