[Cite as *State v. Hill*, 2014-Ohio-532.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case Nos. 2013-CA-11 |
| Plaintiff-Appellee | : | 2013-CA-12 |
| | : | |
| v. | : | |
| | : | Trial Court Case Nos. 12-CR-588 |
| MICHAEL HILL | : | 12-CR-735 |
| | : | |
| Defendant-Appellant | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of February, 2014.

. . . . . . . . . . .

D. ANDREW WILSON, Atty. Reg. #0073767, by DANIEL D. CAREY, Atty. Reg. #0051843, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Springfield, Ohio 45501
      Attorneys for Plaintiff-Appellee

JOHN A. FISCHER, Atty. Reg. #0068346, Dearie & Fischer LLC, Greene Town Center, 70 Birch Alley, Suite 240, Beavercreek, Ohio 45440
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} In these two consolidated appeals, defendant-appellant Michael Hill appeals

from each of two separate convictions for Failure to Comply with an Order or Signal of a Police Officer, Causing a Substantial Risk of Serious Physical Harm to Persons or Property, in violation of R.C. 2921.331(B) and 2921.331(C)(5), felonies of the third-degree. The first offense occurred on August 9, 2012, and was tried to a jury on January 3, 2013. (First Offense, or First Conviction, respectively.) The second offense occurred on October 20, 2012, and was tried to a jury on January 23-24, 2013. (Second Offense, or Second Conviction, respectively.) The First Offense and Conviction is Case No. 12-CR-0588 in the trial court, and Case No. 13-CA-11 in this court. The Second Offense and Conviction is Case No. 12-CR-0735 in the trial court, and Case No. 13-CA-12 in this court.

{¶ 2} With respect to each of the two convictions, Hill contends that there was insufficient proof of venue. We conclude that there was sufficient proof.

{¶ 3} With respect to the Second Conviction, Hill contends that there was insufficient evidence that his failure to comply caused a substantial risk of serious physical harm to persons or property. We disagree.

{¶ 4} Also with respect to the Second Conviction, Hill contends that the trial court abused its discretion when it overruled his motion for a mistrial after a police officer, once on cross-examination, and again on re-cross-examination, referred to it being the job of the police to apprehend felons, when asked why he chased Hill if he thought it was dangerous. The trial court overruled the motion for a mistrial, construing this testimony as referring to the felonious nature of Hill's high-speed flight, but allowed Hill the opportunity to test this construction with further questioning of the witness. Hill declined to do so. We find no abuse of discretion.

{¶ 5} Accordingly, each of the judgments from which these consolidated appeals are

taken is Affirmed.

## I.    The August 27, 2012 Chase

{¶ 6}    Hill came to the attention of Clark County Sheriff's Deputy Denise Jones when he made an illegal U-turn right in front of her, almost hitting the front end of her cruiser.    The time was 1:17 a.m., August 9, 2012.    Deputy Jones was driving south on South Limestone Street, next to Springfield South High School.    Hill was driving north when he made his U-turn.

{¶ 7}    Deputy Jones activated her overhead lights.    Jones accelerated to 80 to 90 miles per hour.    The speed limit was 35 mph.    Deputy Jones turned on her siren and pursued Hill.

{¶ 8}    Because Hill does not contest that there is sufficient evidence in the record to support the jury's finding, in this case, that his flight caused a substantial risk of serious physical harm to persons or property, we find it unnecessary to give an extended account of this chase. Suffice it to say that the pursuit continued through about twenty intersections, three or four of which were regulated by traffic signals.    At one point, Hill crossed the median into an opposite-bound lane.    At another point, he turned off his headlights.    When the pursuit finally ended, Hill did not obey Deputy Jones's order to exit his vehicle for two or three minutes, finally exiting at gunpoint.

## II.    The October 20, 2012 Chase

{¶ 9}    Springfield Police Officer Eric Fleming was on duty with Officer Deric Nichols in a patrol van on Saturday, October 20, 2012, at about 1:34 a.m.    He had active warrants to serve on Hill, and knew both Hill and the car he drove.    When Fleming turned onto Race Street,

they saw a car like the one Hill drove pull out of the Night Owl Bar. Fleming followed the car until he could pull beside it, on High Street, and identify Hill as the driver.

**{¶ 10}** Fleming verified that the warrants were still active. He pulled behind Hill's car on Spring Street, and activated his overhead lights to effect a stop. Hill did not stop, so the officers activated their siren. Hill turned down East Madison Avenue, a residential street with cars parked on both sides.

**{¶ 11}** Fleming and Nichols decided to end their pursuit when it became clear Hill was not going to stop, being in a police van and fearing injury to a pedestrian might ensue from further pursuit. They notified dispatch that they were discontinuing pursuit. Dispatch notified them that the car was registered to an owner at 300 East McCreight Avenue, which was about four blocks from their present location.

**{¶ 12}** As Fleming and Nichols were nearing McCreight Avenue, they saw Officer Andrew Scott in pursuit of Hill turning from McCreight northbound onto North Limestone Street. Officer Scott was pursuing Hill at 70 to 80 miles per hour, but was falling further behind. There were other cars on the road.

**{¶ 13}** Hill turned east on Home Road. He was "greatly exceeding" the posted speed limit of 35 mph. When he reached North Belmont, he did not stop for a red light, but turned south onto Belmont, making a wide turn and sliding into the curb. Fleming testified that "had there been a car waiting at the stop light, he [Hill] would have hit it."

**{¶ 14}** Hill then proceeded down North Belmont, a residential street with a 25 mph posted speed limit, at 50 mph. From there, North Belmont was a "straight down hill," to the intersection with Mitchell Boulevard, "a blind intersection if you're going southbound." Hill

proceeded through a red light at that blind intersection without appearing "to even slow down." There were bars in the neighborhood of the intersection of Belmont and Mitchell.

{¶ 15} Hill turned westbound on Columbus Avenue, proceeding to Hillside, where Hill turned south to the first driveway, and pulled into the driveway. Hill stopped abruptly. Officer Scott, who was behind Hill, stopped, and his cruiser "slid in the gravel and clipped the back end of [Hill's] car." Hill was then apprehended, without further incident.

{¶ 16} Fleming identified State's Exhibit 1, which was admitted in evidence, as: "The street map of Springfield and, this is the route we took."

{¶ 17} Officer Scott also testified. He testified that he did not have a reason to be looking for an individual named Michael Hill. After he arrived at 300 East McCreight, upon receiving the dispatch concerning the earlier pursuit, he saw Hill in his car, stopped westbound against the curb. When Officer Scott activated his overhead lights and started to get out of his cruiser, Hill "took off" westbound, toward Limestone Street.

{¶ 18} Officer Scott testified that the roads were wet, after a recent rain, and that there was other traffic present. He testified that Hill's speed on Home Road exceeded 80 mph.

{¶ 19} Officer Scott testified that Hill slowed to about 50 mph to make the turn from Limestone onto southbound Belmont, and that as Hill made the turn, "he slid across both lanes of traffic and hit the curb, which would be on the east side of the street and then continued south." In other words, Hill hit the curb on the northbound side of the Belmont, all the way on the other side from the southbound side, while he was traveling southbound.

{¶ 20} Officer Scott wasn't sure whether Hill made the left turn from Limestone onto Belmont against a red light, as Officer Fleming had testified, but Officer Scott corroborated

Officer Fleming's testimony that Hill proceeded through the blind intersection of Belmont and Mitchell Boulevard against a red light, at 50 mph.

**{¶ 21}** Officer Scott testified that as he was following Hill on Columbus Avenue, he noticed for the first time that something was wrong with Hill's front left tire:

> There was, like, smoke and some debris that was coming off that area of the car. So, I don't know if it was just pieces falling off or what. It appeared like the tire was going down.

**{¶ 22}** Officer Scott had earlier attributed this damage to Hill's collision with the left curb when he turned left from Limestone onto Belmont. Officer Scott also testified that Hill began slowing down after he turned onto Belmont, to 40 mph. A reasonable jury could infer that the only reason Hill did not resume his 80 to 90 mph flight after he turned left on Belmont was that he blew his left front tire when he hit the curb after losing control on the turn.

### III.   The Course of Proceedings

**{¶ 23}** In both cases, Hill was charged by indictment with Failure to Comply with an Order or Signal of a Police Officer, Causing a Substantial Risk of Serious Physical Harm to Persons or Property, in violation of R.C. 2921.331(B) and 2921.331(C)(5), a felony of the third-degree. In both cases, Hill was convicted, following a jury trial. Hill was sentenced to two years in prison for each of the offenses, to be served consecutively, for a total sentence of four years.

**{¶ 24}** From his convictions and sentences, Hill appeals.

**IV.   Hill's Second Conviction Is Supported by Sufficient Evidence that**

**his Failure to Obey the Signal of Police Officer Scott to Stop Created a**

**Substantial Risk of Serious Physical Harm to Persons or Property**

**{¶ 25}**   Hill's First Assignment of Error is as follows:

THE JURY'S FINDING THAT MR. HILL'S CONDUCT CAUSED A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM TO PERSONS OR PROPERTY WAS BASED ON INSUFFICIENT EVIDENCE.

**{¶ 26}**   As a threshold matter, Hill makes the argument, in his reply brief, that if a person can be convicted of the felony offense absent evidence that a specific person or specific property was subjected to a substantial risk of serious physical harm, as opposed to evidence that persons and property in general were subjected to that risk, then "criminal defendants charged with fleeing police will automatically face a third-degree felony rather than a first-degree misdemeanor, because there is no car chase that does not involve substantial risk to the driver and pursuing officers."   Hill continues: "This cannot be the intent of the Ohio General Assembly. Otherwise, the misdemeanor provision of Ohio Rev. Code § 2921.331(C)(3) would never have been enacted."

**{¶ 27}**   We find this argument difficult to follow.   A misdemeanor conviction for violation of R.C. 2921.331(B) merely requires proof that the accused "operate[d] a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."   It does not require proof that the accused, like Hill in this case, led the police on a high-speed chase while driving recklessly.   To be sure, a person seeking to flee the police might be more likely to succeed in that objective by

driving fast and recklessly, but an attempt to elude or flee the police does not have to be fast and reckless to constitute a violation of the statute.

{¶ 28} In our view, driving 80 to 90 miles per hour on city streets with a posted speed limit of 35 mph creates a substantial risk of serious physical harm to persons or property, especially in view of the officers' testimony that there were other cars on the road. If that were not enough, the act of making a left turn through a red light, at 50 mph, losing control of the vehicle and colliding with the left curb, all the way across the oncoming lane, certainly creates a substantial risk of serious physical harm to persons or property. That no persons or property happened to be present to be harmed is fortuitous from Hill's point of view. Finally, running a red light, at 50 mph, through a blind intersection must be deemed to create a substantial risk of serious physical harm to persons or property; Hill cannot have known, because the intersection was blind, that there was no cross traffic, or pedestrians, to be struck.

{¶ 29} Hill cites no authority for his construction of the statute, but the State cites authority for the contrary proposition. One authority cited by the State is *State v. Love*, 9th Dist. Summit No. 21654, 2004-Ohio-1422. The court of appeals laid out the facts in that case, at ¶14-15, as follows:

> At trial, Officers Burnette and Gray of The University of Akron Police Department testified on behalf of the State. Officer Burnette testified that on the night of September 9, 2002, he was driving a marked police car in the vicinity of The University of Akron ("the University"), in Akron, Ohio. As he was pulling into the parking lot of a gas station on the corner of East Exchange and Brown Streets, he witnessed Appellant driving a motor vehicle, "peeling its tires, [and]

fishtailing in front of a group of several black males." Officer Burnette testified that he immediately activated his overhead lights and siren, and proceeded to follow Appellant, spacing his car two car lengths behind Appellant's car. According to the officer's testimony, Appellant failed to stop and proceeded to travel down East Exchange Street, commonly referred to as the "Zip Strip" because of its location adjacent to the University and its dense population of sports bars, night clubs, restaurants, student oriented businesses and student housing facilities. The officer further testified that he called for back-up, and Officer Gray joined in the pursuit of Appellant, following directly behind Officer Burnette's car.

Both officers testified that Appellant ran the red light of a major intersection near the "Zip Strip;" drove through residential areas adjacent to the University and the "Zip Strip" at speeds ten to fifteen miles over the posted speed limit; ran two stop signs and drove down the middle of the road in these adjacent residential areas; and forced other drivers to pull to the side of the road so that he could speed past while both police cars were in pursuit. They further testified that Appellant ultimately entered the parking lot of an apartment building, which was effectively a dead end, jumped out of his car with the motor running, left the headlights on and the driver's side door open, and attempted to flee the scene.

{¶ 30} in rejecting an argument similar to the one Hill makes here, the Ninth District Court of Appeals held:

Our careful review of the record indicates that the State did present ample evidence that Appellant failed to comply with an order or signal of a police officer

and created a substantial risk of serious physical harm to persons or property. A jury could reasonably find that speeding through the "Zip Strip" and residential areas adjacent to the University, running stop signs and red lights in the same vicinity, and driving down the middle of the road while police officers were in pursuit with lights and sirens activated created a substantial risk of harm to persons or property and constituted failure to comply with an order or signal of a police officer. A jury could also reasonably find that the failure of Appellant to engage in a "near collision" speaks to nothing more than Appellant's good luck and the careful driving on the part of other motorists on the road; such an assertion is irrelevant to our analysis because it fails to speak to the level of risk that Appellant's reckless driving created. *Id.*, at ¶ 19.

**{¶ 31}** The State also cites *State v. Bash*, 5th Dist. Licking No. 02-CA-00118, 2003-Ohio-4191, in which the court of appeals, at ¶ 4, cited facts similar to the facts in the case before us:

On August 3, 2002, Trooper Joshua Weaver of the Ohio State Highway Patrol observed a vehicle without a functioning license plate light, traveling in Newark, Ohio. Trooper Weaver followed the vehicle and attempted to effectuate a traffic stop, activating the sirens and lights on his cruiser. He radioed dispatch to call in the stop, and turned on his video camera. The driver, however, did not stop the vehicle, but accelerated to speeds of 90 mph. The officer informed dispatch he was in pursuit. According to the officer, the vehicle was all over the road. He testified there were no other vehicles on the road at the time. The

vehicle traveled off St. Rt. 16, down the exit ramp for St. Rt. 79 without decelerating. At the end of the exit ramp, the driver did not stop the vehicle at the posted stop sign, but attempted to negotiate a right hand turn onto Cedar Street. The driver lost control and the vehicle skidded through the intersection, and went over a curb on the opposite side of the roadway. Trooper Weaver testified if anyone had been traveling along Cedar Street, the person would not have been able to avoid an accident with appellant's vehicle. The incident occurred at approximately 2:10 a.m.

{¶ 32} The defendant in *Bash*, like Hill in the case before us, argued that there was no evidence that he had created a substantial risk of serious physical harm to persons or property, because "no accidents resulted from his actions," "there were no other vehicles on the road or in the vicinity at the time of the pursuit," and "there was no evidence of pedestrians being in danger or even in proximity of the pursuit." *Id.*, ¶ 17. The Fifth District Court of Appeals was not persuaded:

> In the matter sub judice, the evidence before the jury demonstrated appellant drove at an excessive rate of speed, at times reaching 90 mph. As noted supra, appellant did not stop at traffic signs, and did not slow down while negotiating a turn. As a result of this conduct, appellant lost control of his vehicle and skidded through an intersection. We find this to be competent, credible evidence to support the jury's finding appellant created a substantial risk of serious physical harm to persons and property, and such finding was not against the manifest weight of the evidence. *Id.*, ¶ 22.

{¶ 33} The only significant difference we can see between the facts in *Bash* and the facts in the case before us is that in *Bash* there was evidence that there were no other vehicles on the road, whereas in the case before us, the evidence was to the contrary. Obviously, that is not a distinction in Hill's favor.

{¶ 34} Hill does not attempt to distinguish *Love* and *Bash*, but argues that we should not follow those precedents. We are not persuaded. We conclude that there is evidence in this record from which a reasonable jury could conclude that Hill's reckless, high-speed flight created a substantial risk of substantial harm to persons or property, even though, fortunately, no persons or property were harmed.

{¶ 35} Hill's First Assignment of Error is overruled.

## V. The Trial Court Did Not Abuse its Discretion in Overruling Hill's Motion for a Mistrial During His Trial for his Second Offense

{¶ 36} Hill's Second Assignment of Error is as follows:

MR. HILL SUFFERED MATERIAL PREJUDICE BY BEING FORCED TO TESTIFY AFTER A STATE WITNESS REFERRED TO MR. HILL AS A FELON.

{¶ 37} During the cross-examination of Officer Scott, the following colloquy occurred:

Q. Okay. And you're following Mr. Hill at the same rate of speed he's going, correct?

A. Yes.

Q. And if you felt it was dangerous, you would not have been doing that, correct?

A. I'm sorry? If I thought it was dangerous?

Q. Correct.

A. I thought the whole thing was dangerous.

Q. Okay.

A. But, unfortunately, that's part of my job, is to apprehend felons.

{¶ 38} Officer Scott's re-cross-examination, in its entirety, was as follows:

Q. Officer Scott, if you felt this was a danger, why didn't you stop the pursuit?

A. Because our policy is, we need to apprehend felons. It wasn't in violation of our pursuit policy. Unfortunately, pursuits are part of our job. It's not something we like to do. It's something we do as a part of our job.

{¶ 39} Hill then moved for a mistrial:

MS. LENNON [representing Hill]: I'd like to make a motion on the record for a mistrial. In saying he's persuing [sic] a felon, that puts me in a position. He was trying to serve a warrant. To indicate that my client is a felon, it takes away his right not to testify. I didn't – I didn't ask that question. I mean, he just came out.

MR. CAREY [representing the State]: He was responding to the question. He was referring to it being a felony pursuit, failing to stop after a signal. He was answering the question.

MS. LENNON: He was referring to my client as a felon.

THE COURT: He said he was persuing [sic] a felony stop. He said when

you have to pursue felons.

THE COURT: If, in fact, his operation of the vehicle, at that time, was a felony offense. He said trying to stop felons. He didn't say a felon.

MS. LENNON: I know, he didn't say that. He said the policy to pursue felons.

THE COURT: If, in fact, it was a felony of the vehicle [sic]. If you want, you can ask him to clarify that statement, of course, make sure he understands you're not talking about prior.

{¶ 40} The next witness was then called. There is nothing in the record to reflect that Hill ever took up the trial court's offer to seek clarification that Officer Scott was not referring to any prior felonies having been committed by Hill.

{¶ 41} In this assignment of error, Hill contends that the trial court erred by overruling, tacitly, Hill's motion for a mistrial. The trial court's decision on a motion for a mistrial rests within the court's discretion. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). Ordinarily, an abuse-of-discretion review tests whether the trial court's decision was reasonable. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 42} The trial court's construction of Officer Scott's testimony was reasonable, especially in view of Scott's prior testimony:

Q. And did you have reason, at that time [while he was on patrol, prior to the dispatch report of a police chase], to be looking for an individual named, Michael Allen Hill?

A.  I did not.  No.

{¶ 43}  Although Officer Fleming had testified that he was aware of "active warrants" relating to Hill, Officer Scott never indicated, in his testimony, that he was aware of those warrants when he attempted to stop Hill, and Hill "took off."  Accordingly, the trial court's construction of Officer Scott's testimony – that Scott was referring to Hill's felonious high-speed flight from police officers, not to any prior felony offenses – is reasonable.  And the trial court afforded Hill the opportunity to test that construction with further questioning, which Hill, understandably, declined.

{¶ 44}  We find no abuse of discretion in the trial court's handling of this matter.  Hill's Second Assignment of Error is overruled.

## VI.  There Was Sufficient Proof of Venue in Both Trials

{¶ 45}  Hill's Third Assignment of Error, which he asserts in both appeals, is:

THE STATE FAILED TO SHOW VENUE.

{¶ 46}  Hill cites *State v. Barr*, 158 Ohio App.3d 86, 2004-Ohio-3900, 814 N.E.2d 79 (7th Dist.), ¶ 25, for the proposition that establishing venue indirectly by testimony as to streets and locations in the county is not the best practice.  He also cites *State v. Gonzalez*, 188 Ohio App.3d 121, 2010-Ohio-982, 934 N.E.2d 248 (3rd Dist.).  In *Gonzalez*, at ¶ 7, the court of appeals held that proof that the investigating officer's jurisdiction was within the jurisdiction of the forum county was not sufficient proof of venue, without some proof that the officer was acting within that jurisdiction.  Hill asks us "to establish a bright-line rule for proving venue – the State must specifically elicit testimony from a witness as to the county in which the alleged

conduct of the defendant took place." We decline to do so.

{¶ 47} In both of Hill's trials there was better proof of venue than in *Gonzalez* or *Barr*. In the trial of Hill's First Offense, Clark County Sheriff's Deputy Denise Jones, the State's sole witness, who chased the fleeing Hill, testified as follows:

Q. Just to recap. On the early morning of Thursday, August 9, 2012, at about 1:17 a.m., you were on duty in your uniform, in your official cruiser on South Limestone Street. Is that correct?

A. Yes, sir.

Q. Now, is that in Clark County, Ohio?

A. Yes, sir.

Q. Now, did something unusual happen about that time?

A. Right. There was a vehicle that was traveling northbound in the northbound lane that did a U-turn right in front of my cruiser, almost hitting the front end of my cruiser.

* * *

Q. And did you attempt to make a traffic stop at that time?

A. Right. I activated my overhead lights to signify a traffic stop.

Q. Did the car stop?

A. No, sir.

Q. What did it do?

A. It continued on actually at a very quick pace, took off from me. I turned the siren on and continued southbound.

Q. Okay. Were you able to gauge the speed of that vehicle?

A. I'd say about 80 to 90 miles per hour.

{¶ 48} From the testimony quoted above, it is clear that Deputy Jones's high-speed chase of Hill began in Clark County, continuing south on Limestone Street until Hill's eventual apprehension by Jones. One element of the offense with which Hill was charged was operating a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from the police officer to bring the person's motor vehicle to a stop. R.C. 2921.331(B). Deputy Jones's testimony quoted above is sufficient proof for the jury to have found that the element of eluding or fleeing, at least, was committed by Hill while he was in Clark County.

{¶ 49} Venue resides in a court in the territory of which any element of the offense was committed. R.C. 2901.12(A). Thus, even if the State failed to prove that subsequent elements of Hill's continuing offense during the high-speed chase on Limestone Street occurred within Clark County,[1] its proof that the element of fleeing and eluding took place in Clark County is sufficient.

{¶ 50} In Hill's trial for his Second Offense, a roadmap of Springfield was admitted in evidence. Officer Eric Fleming identified this map as a street map of Springfield, on which the route of his chase of Hill was depicted. Officer Andrew Scott also identified the map as a map of northern Springfield, on which the route of his chase of Hill was also depicted.

{¶ 51} This evidence was sufficient for the jury to find, beyond reasonable doubt, that Hill's high-speed flight, first from Officers Fleming and Nichols, and then from Officer Scott, all

---

[1] To anyone familiar with Clark County, it is painfully apparent that the chase south on Limestone Street was entirely within Clark County. But that does not relieve the State of its burden of proving venue in this case.

took place in the City of Springfield. The jurors, all citizens of Clark County, were bound to know that the City of Springfield, the location of the very courthouse in which they were sitting as jurors, is within Clark County.

{¶ 52} In any event, as the State points out, a portion of the high-speed chase was captured on a red-light camera at the intersection of North Limestone Street and Home Road, and Officer Deric Nichols testified that this intersection was within Clark County. Hill contends that this evidence should be ignored, since the State called Nichols in rebuttal for the sole purpose of impeaching Hill's testimony. But Nichols's testimony that the intersection was within Clark County was elicited by the trial court, and Hill did not object to the trial court's question upon the ground that it was outside the scope of the purpose for which Nichols was called, Hill not having testified on the issue of venue.

{¶ 53} Hill's Third Assignment of Error is overruled.

## VII. Conclusion

{¶ 54} All of Hill's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.


Copies mailed to:

D. Andrew Wilson
Daniel D. Carey
John A. Fischer
Hon. Richard J. O'Neill