[Cite as *State v. Tupps*, 2023-Ohio-2097.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                      CASE NO.  3-22-48

      v.

JASON TUPPS,                             O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Crawford County Common Pleas Court
Trial Court No.  21-CR-0313

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:  June 26, 2023

APPEARANCES:

      *Christopher Bazeley* for Appellant

      *Drew Wood* for Appellee

**MILLER, P.J.**

{¶1} Defendant-appellant, Jason Tupps, appeals the October 31, 2022 judgment of sentence of the Crawford County Court of Common Pleas. For the reasons that follow, we affirm in part and reverse in part.

## I. Facts & Procedural History

{¶2} Tupps and the victim in this case, L.T., were married in July 2018. However, by the summer of 2021, the marriage was disintegrating and the two were arguing frequently. L.T. started to make audio recordings of these arguments because, in her words, it made her "feel safer * * * in case something was to happen." (Aug. 23, 2022 Tr. at 55-56). L.T. eventually recorded some 40 hours of her arguments and conversations with Tupps. After an argument on the evening of August 28, 2021, L.T. went to bed but forgot to turn off the recording application on her cell phone. During the night, her cell phone captured audio of what L.T. later described as Tupps forcibly penetrating her vagina with his fingers. Following the incident, L.T. continued to live with Tupps. On September 9, 2021, Tupps and L.T. got into another argument at their home in Crestline. An audio recording made during the confrontation documented what L.T. alleged to be an act of domestic violence committed by Tupps against her.

{¶3} On September 28, 2021, the Crawford County Grand Jury indicted Tupps on one count of rape in violation of R.C. 2907.02(A)(2), a first-degree felony,

and one count of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. On October 7, 2021, Tupps appeared for arraignment and pleaded not guilty to the counts of the indictment.

{¶4} On August 10, 2022, the State filed a motion requesting the trial court instruct the jury at Tupps's trial regarding adoptive admissions under Evid.R. 801(D)(2)(b). The State argued a jury instruction on adoptive admissions was required because on one of the audio recordings made by L.T., "[L.T.] accused [Tupps] of digitally penetrating her by force; [Tupps] did not deny the accusation; [and] [Tupps] remained silent for a period of several seconds before changing the subject of the conversation." (Doc. No. 29).

{¶5} A jury trial in the matter commenced on August 22, 2022. Before opening statements, the trial court heard arguments concerning the admissibility of the audio recording as an adoptive admission. Tupps maintained that his silence on the audio recording did not satisfy the requirements for an adoptive admission under Evid.R. 801(D)(2)(b) because he ultimately disavowed L.T.'s accusation later in the recording. The trial court overruled Tupps's objections and determined the jury would be permitted to consider whether Tupps's silence on the recording constituted an adoptive admission. The trial court later instructed the jury on adoptive admissions as requested by the State.

{¶6} On August 24, 2022, the jury found Tupps guilty of rape as charged in the indictment and not guilty of the domestic-violence charge. The trial court accepted the jury's verdicts and continued sentencing pending the preparation of a presentence investigation report.

{¶7} A sentencing hearing was held on October 31, 2022. At the hearing, the trial court sentenced Tupps to an indefinite term of five to seven and a half years in prison. The trial court filed its judgment entry of sentence on October 31, 2022.

## II. Assignments of Error

{¶8} On November 14, 2022, Tupps timely filed a notice of appeal. He raises the following five assignments of error for our review:

### First Assignment of Error

**Tupps's conviction is not supported by sufficient evidence that Crawford County was the appropriate venue.**

### Second Assignment of Error

**The trial court abused its discretion by providing, and then emphasizing, a jury instruction regarding Tupps's silence.**

### Third Assignment of Error

**The trial court erred when it failed to advise Tupps of the R.C. 2929.19(B)(2)(c) factors at sentencing.**

### Fourth Assignment of Error

**The hearing provision in R.C. 2929.271(C) is vague and violates Tupps's rights to due process.**

**Fifth Assignment of Error**

**The Reagan Tokes Law is unconstitutional.**

**III.  Discussion**

**A. First Assignment of Error:  Did the trial court commit plain error by accepting the jury's guilty verdict without adequate proof of venue?**

{¶9} In his first assignment of error, Tupps argues that the State failed to prove the rape offense was committed in Crawford County and the trial court therefore erred by accepting the jury's guilty verdict on that count.  Specifically, Tupps maintains that while the State presented testimony from L.T. that the rape occurred in "the bedroom," it failed to prove that "the bedroom" was the bedroom in Tupps and L.T.'s home in Crestline.

**i. Venue & Plain Error**

{¶10} "'Venue' commonly refers to the appropriate place of trial for a criminal prosecution within a state." *State v. Williams*, 53 Ohio App.3d 1, 5 (10th Dist.1988).  "Venue is not a material element of any crime but, unless waived, is a fact that must be proven at trial beyond a reasonable doubt." *State v. Barr*, 158 Ohio App.3d 86, 2004-Ohio-3900, ¶ 14 (7th Dist.).  "Therefore, unless the prosecution proves beyond a reasonable doubt that the crime alleged was committed in the county where the trial was held or the defendant waives this right, the defendant cannot be convicted." *Toledo v. Taberner*, 61 Ohio App.3d 791, 793 (6th Dist.1989).

**{¶11}** "Ideally, the prosecutor will directly establish venue," but it "need not be proven in express terms." *Id.* "Rather, it can be established by all of the facts and circumstances viewed in the light most favorable to the State." *State v. McVety*, 3d Dist. Logan No. 8-16-19, 2017-Ohio-2796, ¶ 10. Courts evaluating claims that venue has not been proven have "broad discretion to determine the facts which would establish venue." *Id.*

**{¶12}** Like any other error or deficiency in the proceedings of a trial court, the State's purported failure to produce evidence sufficient to establish venue is an issue that ought to be brought to the trial court's attention, typically as part of a Crim.R. 29 motion. It is undisputed that Tupps failed to notify the trial court in this case of the supposed deficiencies in the State's evidence relating to venue, and as a consequence, Tupps has preserved only plain error for review. *See id.* at ¶ 11. But notwithstanding Tupps's failure to raise the issue before the trial court, his conviction must be reversed if the State failed to present evidence sufficient to demonstrate venue beyond a reasonable doubt. *See State v. Jackson*, 3d Dist. Seneca No. 13-14-30, 2015-Ohio-1694, ¶ 7-8.

**ii. The trial court did not commit plain error as there was sufficient evidence to establish venue in Crawford County.**

**{¶13}** During direct examination, the prosecutor elicited statements from L.T. confirming that the home where she resided with Tupps is located in Crestline, Crawford County, Ohio. (Aug. 23, 2022 Tr. at 49, 52-53). Through this line of

questioning, the prosecutor went part of the way to directly establish that venue was proper in Crawford County. However, the prosecutor neglected to conduct a focused follow-up inquiry of L.T.—such as asking whether the rape occurred in Crestline or whether it happened in the bedroom of the marital home—that would have firmly established Crawford County as the proper venue. As a result, venue was not proven in express terms. Even so, reviewing the totality of L.T.'s testimony at Tupps's trial, it is evident that "the bedroom" L.T. repeatedly referred to in her testimony was her bedroom in the marital home in Crawford County.

{¶14} Over the course of her testimony, L.T. made many statements tending to show that the rape offense was committed in the marital home. For example, on direct examination, the prosecutor asked L.T. what she did with her cell phone when she went to bed on the evening of August 28, 2021. She responded, "I do what I normally do, put it on my nightstand and plug it in and lay down." (Aug. 23, 2022 Tr. at 59). L.T.'s answer suggested that August 28, 2021, was an otherwise routine evening (i.e., one spent at home rather than at a hotel or a friend's home) and that she concluded her day as she usually does when at home.

{¶15} In addition, L.T. testified regarding a container of lubricating jelly that Tupps used to facilitate the rape offense. She stated that the jelly was present in the bedroom on August 28, 2021, and the sound of Tupps opening the jelly container could be heard on the audio recording that captured the events of that evening.

(Aug. 23, 2022 Tr. at 61-62, 67). On cross-examination, Tupps's defense counsel asked L.T. whether the lubricating jelly was in "your [L.T.'s] bedroom August 28th into 29th." (Aug. 23, 2022 Tr. at 158). L.T. responded that the lubricating jelly was in her bedroom and that it was stored in a drawer across the bedroom rather than in the nightstand. (Aug. 23, 2022 Tr. at 158). All this testimony, taken together, indicated that the rape occurred in the bedroom where the lubricating jelly was stored and that this bedroom was in the marital home.

{¶16} Moreover, L.T. testified on cross-examination that she believed she was at home the whole day on August 28, 2021. (Aug. 23, 2022 Tr. at 176). Tupps's defense counsel also engaged L.T. in the following line of questioning that, at a minimum, implied that the rape occurred in the bedroom of the couple's home in Crestline:

> [Defense Counsel]: Okay. And the police came out to your residence and took pictures of the bedroom where it allegedly occurred?
>
> [L.T.]: False.
>
> [Defense Counsel]: Did they take pictures?
>
> [L.T.]: No, they did not.
>
> [Defense Counsel]: You would have allowed them to come in and take all the pictures they wanted, so we can see what the bedroom looked like?
>
> [L.T.]: Yes.

> [Defense Counsel]: But we don't have that, so I am going to ask you questions about it. Standard-sized bedroom?
>
> [L.T.]: Yes.
>
> [Defense Counsel]: Is it a master bedroom for the property?
>
> [L.T.]: Master bedroom, yes.

(Aug. 23, 2022 Tr. at 199).

**{¶17}** Finally, on direct examination, L.T. testified that, after Tupps assaulted her, she laid back down and went to sleep. (Aug. 23, 2022 Tr. at 68). She testified that she did not then contact the police. (Aug. 23, 2022 Tr. at 68). On cross-examination, Tupps's defense counsel sought to clarify why L.T. did not reach out to law enforcement:

> [Defense Counsel]: You gave several reasons on direct examination as to ultimately what kind of held you up and going and reporting it on August 29th, do you remember those questions * * *?
>
> [L.T.]: Somewhat, yes.
>
> [Defense Counsel]: Sure. And I believe you gave answers initially, we were at home and I did not feel that I could leave at the time?
>
> [L.T.]: Yes.

(Aug. 23, 2022 Tr. at 217). This line of questioning also suggested that the rape occurred at the couple's home in Crestline.

**{¶18}** Therefore, considering all the facts and circumstances in evidence in a light most favorable to the State, we conclude that the State presented substantial credible evidence supporting the conclusion that venue in Crawford County had been proven beyond a reasonable doubt. Accordingly, we find the trial court did not commit plain error by accepting the jury's guilty verdict.

**{¶19}** Tupps's first assignment of error is overruled.

**B. Second Assignment of Error: Did the trial court commit plain error by giving an adoptive-admission jury instruction or repeating a portion of it?**

**{¶20}** In his second assignment of error, Tupps argues that the trial court erred by instructing the jury regarding adoptive admissions under Evid.R. 801(D)(2)(b) and by repeating one line of the jury instruction. Tupps does not challenge the admissibility of the adoptive admission, as such, but rather the particular instruction given by the trial court.

**i. Jury Instructions Generally & Standard of Review**

**{¶21}** "Trial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the factfinder." *State v. Shine-Johnson*, 10th Dist. Franklin No. 17AP-194, 2018-Ohio-3347, ¶ 25. "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240. "The relevant

principle for jury instructions is not one of abstract correctness, but is whether an instruction—even if a correct statement of law—is potentially misleading." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 52.

**{¶22}** As a general matter, "[j]ury instructions are within the trial court's discretion, which an appellate court will not disturb absent an abuse of discretion." *State v. Orians*, 179 Ohio App.3d 701, 2008-Ohio-6185, ¶ 10 (3d Dist.). Here, however, Tupps did not object to the specific adoptive-admission instruction prepared by the trial court. In fact, Tupps's defense counsel expressed his satisfaction with the instruction to be given to the jury. (Aug. 24, 2022 Tr. at 255). Nor did Tupps object to the trial court's repetition of one line of the adoptive-admission instruction. Consequently, because Tupps did not object to the adoptive-admission instruction either as formulated by the trial court or as actually given to the jury, he has forfeited all but plain error on appeal. *See State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 65.

**{¶23}** For plain error to apply, the trial court must have deviated from a legal rule, the error must be plain, i.e., an obvious defect in the proceeding, and the error must have affected the defendant's "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "[T]o demonstrate that the trial court's error affected a substantial right, the defendant must establish that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been

otherwise." *State v. Sutton*, 3d Dist. Seneca No. 13-21-11, 2022-Ohio-2452, ¶ 50. We take "[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**ii. Adoptive Admissions**

**{¶24}** Adoptive admissions are governed by Evid.R. 801(D)(2)(b), which provides that "[a] statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement of which the party has manifested an adoption or belief in its truth * * *." "'A defendant may demonstrate his adoption of a nonparty's out-of-court statement through his demeanor, conduct, words, or even silence.'" *State v. Bertuzzi*, 3d Dist. Marion No. 9-13-12, 2014-Ohio-5093, ¶ 94, quoting *State v. Gibson*, 2d Dist. Greene No. 09-CA-05, 2010-Ohio-1121, ¶ 15.

**{¶25}** "There are obvious risks in attributing a statement of a third person to be that of a party * * *." 1980 Staff Notes, Evid.R. 801. To mitigate these risks, courts have laid down strict requirements before a statement can be considered as an adoptive admission:

> "In order for an adoptive admission to be applicable, the declarant must have made the statement in the presence of the party against whom the statement is offered at trial. In addition, the party must have heard and understood the statement, must have been free to disavow it, and must have either expressly acknowledged the truth of the statement or remained silent when a reasonable person would have denied its truthfulness."

*Gibson* at ¶ 15, quoting *State v. Comstock*, 11th Dist. Ashtabula No. 96-A-0058, 1997 WL 531304, \*5 (Aug. 29, 1997). "Absent these determinations, a statement of a third person cannot be an admission by acquiescence of a party opponent." 1980 Staff Notes, Evid.R. 801. Additionally, even when these criteria are satisfied, the fact finder need not find that the defendant adopted the third party's statement. The trier of fact is permitted, but not obligated, to infer that the defendant acquiesced to the truth of the third party's statement. *See United States v. Hampton*, 843 F.Supp.2d 571, 578-579 (E.D.Pa.2012) (applying the analogous Fed.R.Evid. 801(d)(2)(B)); *Zeller v. State*, 123 Ohio St. 519, 523 (1931).

### iii. The trial court did not commit plain error with respect to the adoptive-admission jury instruction.

{¶26} The trial court in this case instructed the jury on adoptive admissions as follows:

> Evidence has been admitted, indicating that the Defendant remained silent after being confronted by [L.T.] in State's Exhibit 2 [one of the audio recordings made by L.T.]. Consider the circumstances surrounding the statement. If you find that the Defendant understood the statement, and that the Defendant was free to deny the truth of the statement, and that a reasonable person would have denied the statement, if the statement were untrue, you may, but are not required to infer that the Defendant acknowledged the statement of [L.T.] as true. You may, but are not required to infer that the Defendant acknowledged the statement of [L.T.] as true.

(Aug. 24, 2022 Tr. at 368-369).

-13-

**{¶27}** With respect to Tupps's first argument—that the trial court was mistaken in even giving a jury instruction on adoptive admissions—we conclude that the trial court did not err, let alone commit plain error, by issuing this instruction. To begin, an adoptive-admission instruction was clearly applicable to the facts of the case. In State's Exhibit 2—a recording of an in-person conversation between Tupps and L.T.—L.T. asks Tupps, "What would they think if I told them the fact that you ripped my panties off and shoved your fingers up inside me?" When L.T. finishes speaking, Tupps is silent for approximately nine seconds. When Tupps next speaks, he does not respond to what L.T. said but instead asks L.T. whether she recalled a night that his mother visited them. There is nothing in State's Exhibit 2 or elsewhere in the record to suggest that Tupps might not have heard or understood what L.T. said or that he was unable to make a denial. Therefore, an adoptive-admission jury instruction was relevant to the facts of the case, and the jury could reasonably reach the conclusion permitted by the instruction.

**{¶28}** Furthermore, the instruction was a correct statement of the law pertaining to adoptive admissions. The jury was accurately instructed on the necessary conditions for Tupps's silence to be deemed an adoptive admission and informed that the inference was permissive rather than mandatory. Finally, the specific instruction was more appropriate as providing only a general instruction on inferences would have been misleading or less than completely helpful to the jury.

-14-

The jury in this case was provided with a legally accurate instruction on its ability to draw inferences from the evidence. (Aug. 24, 2022 Tr. at 367). However, the inference permitted under the adoptive-admission rule is one that can be made only when a narrow set of circumstances are found to be present. Hence, a specific jury instruction on adoptive admissions was required for the jury to understand why State's Exhibit 2 was in evidence and to properly evaluate it. Otherwise, there would have been a risk that the jury might erroneously infer an adoptive admission from circumstances not supporting the inference, make some other impermissible inference from State's Exhibit 2, or use State's Exhibit 2 for an improper purpose. Thus, the instruction was needed for the jury to properly weigh the evidence and fulfill its duty as the trier of fact. *See White*, 142 Ohio St.3d 277, 2015-Ohio-492, at ¶ 53. For this reason, and those discussed above, we conclude that the trial court did not commit plain error by giving the jury an instruction on adoptive admissions.

{¶29} As to Tupps's second argument—that the trial court committed plain error by repeating the final line of the instruction—we conclude that even if the trial court erred, Tupps has failed to establish that he was prejudiced. Tupps contends that the trial court's repetition of the last line of the instruction affected the outcome of his trial because the State, quoting the instruction in its closing arguments, urged the jury to treat Tupps's silence as an adoptive admission, and "[t]he trial court's double emphasis amounted to an implicit statement to the jury that the trial court

agreed with the State's assessment that Tupps's silence amounted to an admission." (Appellant's Brief at 4). He claims that "[t]he instruction misled the jury into believing that both the State and the trial court were unified in their opinion and expected them to reach the same conclusion." (Appellant's Brief at 4).

{¶30} Tupps's argument is unpersuasive. For one, the repeated portion of the adoptive-admission instruction did not itself direct the jury to find that Tupps's silence constituted an adoptive admission. Nor did it suggest this result. Rather, the final line of the instruction used neutral language and stressed to the jury that it had no obligation to infer that Tupps's silence amounted to an acknowledgement of the truth of what L.T. was saying. We fail to see how the jury, being twice instructed that it was not required to reach a particular conclusion, would consequently be more inclined to reach that conclusion, and Tupps has not pointed to anything in the record indicating that the jury was so disposed.

{¶31} Additionally, "'[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge.'" *State v. Jalowiec*, 91 Ohio St.3d 220, 231 (2001), quoting *State v. Price*, 60 Ohio St.2d 136 (1979), paragraph four of the syllabus. Here, the trial court also instructed the jury, "Your verdicts must be based solely on the evidence and on the law as I have given it to you in these instructions. Nothing that I have said or done is intended to suggest what your verdicts should be, that is entirely for you to decide." (Aug. 24,

2022 Tr. at 378). With this instruction, the risk that the jury would interpret the trial court's repetition of the final line of the instruction as an endorsement of the State's position on the significance of Tupps's silence, and thus as an indication of the trial court's belief about Tupps's ultimate guilt, was minimized.

**{¶32}** In sum, Tupps has failed to demonstrate that there is a reasonable probability that the outcome of his trial would have been different had the trial court not repeated the last line of the adoptive-admission jury instruction. Therefore, we conclude that the trial court did not commit plain error.

**{¶33}** Tupps's second assignment of error is overruled.

**C. Third Assignment of Error: Is Tupps's sentence contrary to law because the court did not fully comply with R.C. 2929.19(B)(2)(c)?**

**{¶34}** In his third assignment of error, Tupps argues that his prison sentence is contrary to law because the trial court failed at his sentencing hearing to provide him with all of the notifications required by R.C. 2929.19(B)(2)(c).

**i. Standard of Review for Felony Sentencing**

**{¶35}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.*

at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

### ii.  Tupps's sentence is contrary to law.

{¶36} Under R.C. 2929.19(B)(2):

[I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:

* * *

(c)  If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

(i)  That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii)  That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii)  That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

R.C. 2929.19(B)(2)(c)(i)-(v). R.C. 2929.19(B)(2)(c) contains a "mandatory directive." *State v. Greene*, 1st Dist. Hamilton No. C-220160, 2022-Ohio-4536, ¶ 6; *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 24 ("By indicating that the sentencing court 'shall do all of the following' and 'notify the offender of all of the following,' the legislature clearly placed a mandatory duty upon the trial court rather than granting it discretion."). "[I]f a trial court fails to provide notice of all R.C. 2929.19(B)(2)(c) notifications at a sentencing hearing, the sentence is contrary to law." *State v. Bentley*, 4th Dist. Adams No. 21CA1147, 2022-Ohio-1914, ¶ 10.

{¶38} Tupps was sentenced to a non-life indefinite prison term of five to seven and a half years in prison for first-degree felony rape. Accordingly, the trial court had an obligation to comply with R.C. 2929.19(B)(2)(c) and to provide Tupps with all of the notifications set forth in R.C. 2929.19(B)(2)(c)(i)-(v) on the record at his sentencing hearing. However, as the State concedes on appeal, the trial court failed to do so. As a result, we conclude that Tupps's sentence is contrary to law

and that Tupps must be resentenced. *Greene* at ¶ 9-11; *Bentley* at ¶ 9-11; *Hodgkin* at ¶ 24-25; *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, ¶ 36-39.

**{¶39}** Tupps's third assignment of error is therefore sustained, and we remand the matter for resentencing so that the trial court may comply fully with R.C. 2929.19(B)(2)(c). In light of our remand for resentencing, we need not reach the merits of Tupps's fourth and fifth assignments of error concerning the constitutionality of R.C. 2929.271(C) and other provisions of the Reagan Tokes Law. *Bentley* at ¶ 15, citing App.R. 12(A)(1)(c) (declining to consider challenge to the constitutionality of the Reagan Tokes Law after vacating sentence and remanding for resentencing so that the trial court could comply with R.C. 2929.19(B)(2)(c)); *see Wolfe* at ¶ 39 (after remanding for resentencing in compliance with R.C. 2929.19(B)(2)(c), declining to consider assignments of error relating to merger and consecutive sentences).

## IV. Conclusion

**{¶40}** For the foregoing reasons, Tupps's first and second assignments of error are overruled. However, Tupps's third assignment of error is sustained. Having found error prejudicial to Tupps with respect to his sentence, we reverse the judgment of the Crawford County Court of Common Pleas as to that matter and

remand for resentencing consistent with this opinion. In all other respects, we affirm.

*Judgment Affirmed in Part,*
*Reversed in Part, and*
*Cause Remanded*

**WILLAMOWSKI and WALDICK, J.J., concur.**

**/jlr**